Bell Telephone Company of Pennsylvania *v.* Lewis, Secretary, Appellant.

388

Argued November 26, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*George W. Keitel,* Assistant Deputy Attorney General, with him *Wm. A. Schnader,* Attorney General, for appellant.

*Arthur H. Hull,* of *Snyder, Miller, Hull & Hull,* with him *William H. Lamb,* for appellee.

OPINION BY MR. JUSTICE KEPHART, February 4, 1935:
The Central District Printing and Telegraph Company, later merged with the Bell Telephone Company of Pennsylvania, constructed a line of poles, wires and other equipment in Beaver County. Its wires were attached to a bridge that passed over Beaver Creek built by and under the control of the county. The bridge was taken from the county by the Commonwealth under the Act of May

1, 1929, P. L. 1054, reënacted by the Act of May 21, 1931, P. L. 147; it is now part of the general highway system of the Commonwealth. The bridge was destroyed by fire, or at least partially so, and a new bridge was erected in its place. Complete statutory authority had been given the department of highways, through its secretary, to take over, maintain and reconstruct the bridge.

The Act of 1931, supra, authorized the secretary of highways to permit public service companies to place their facilities on state bridges under such conditions and fees as the secretary, with the approval of the governor, might prescribe, and the Act of June 1, 1931, P. L. 350, section 514, provided that all public service companies' licenses for the occupation of bridges maintained by the Commonwealth should be revocable upon six months' notice. While section 4 of the Act of May 21, 1931, P. L. 147, permits such occupancy for such length of time as may be determined by the secretary of highways, with the approval of the governor, however, pursuant to statutory authority, the secretary required all public service companies to sign an application for a bridge occupancy license, known as Form 906, which made this occupancy terminable on six months' notice.

The Bell Company had its facilities on the bridge before the fire, pursuant to an agreement made with the county executed before the State took the bridge over, but this agreement terminated when the bridge was destroyed. The Bell Company, desiring to replace its facilities on the new bridge, agreed with the Commonwealth as to the amount it should pay for the additional cost of construction to enable its facilities to be accommodated, (this amount was actually paid, but only after notice that Form 906 must be executed), and the parties also agreed on the annual rental to be paid. The Bell Company, however, refused to sign Form 906 because it contended that the statutory provisions requiring approval by the governor, and requiring licenses to be revocable on six months' notice were unconstitutional, in viola-

tion of its franchise rights, and that if it signed Form 906 it would be estopped from contesting the constitutionality of the various statutes under which the secretary acted. Mandamus proceedings against the secretary of highways were then instituted by the Bell Company to compel the issuance of a license or permit to occupy the bridge.

The main facts are not in dispute. Some evidence was introduced tending to show that it would be more economical to carry the lines across rivers on bridges than by aerial or submarine cable. This testimony was, of course, irrelevant to the question involved. The court below held the provisions of the statute requiring a license or permit to be had were unconstitutional and directed a peremptory writ to issue. The secretary of highways has appealed.

We need not discuss the many questions that are presented by the parties hereto. Article XVI, section 12, of the Constitution provides that "Any association or corporation organized for the purpose, . . . shall have the right to construct and maintain lines of telegraph within this State, and to connect the same with other lines, and the General Assembly shall, by general law of uniform operation, provide reasonable regulations to give full effect to this section; . . ."

Appellee's predecessor was incorporated under section 33 of the Act of April 29, 1874, P. L. 73. Clause 1 provides that such corporations shall be authorized to construct lines of telegraph along any public roads, streets, lands or highways of this State. While we stated in Westmoreland C. & C. Co. v. Pub. Ser. Com., 294 Pa. 451, 456, that the highways, roads, streets and bridges were the property of the State, and it may set up any agency to control and maintain them, the reasoning on which the principle was based was, first, when that opinion was written the State had taken from its agencies the control and maintenance of a large part of the highways, and, second, more important as the genesis of the principle,

the State in its proprietary right had, as its agencies, the various municipal and quasi municipal authorities (counties, townships, cities and boroughs) which created, owned and controlled the various highways, roads, streets and bridges. The State by the Act of 1836 and other later consonant legislation committed and empowered these authorities to lay out, open, construct, vacate or abandon highways, streets and bridges. They were opened and constructed by moneys received directly through taxation from the taxpayers of the particular authority. As stated in Westmoreland C. & C. Co. v. Pub. Ser. Com., supra, the Commonwealth in 1836 had withdrawn from road building and had committed highways and bridges to its agents for ownership, control, building, maintenance and repair, so that, when the Constitution was adopted, and before this appellee or its predecessor came into being, almost every street, road, highway and bridge in the Commonwealth was locally owned. When construing an act of assembly as the one now before us, the property thus acquired (roads, highways and bridges) was, quoad the municipality and any other party except the Commonwealth, just as much the property of the municipality as though it were owned by an ordinary private citizen. But the agency, the municipality that owned the property, held the title to the property as trustee for governmental purposes, and the Commonwealth could change the trustee whenever it saw fit by transferring it to some other governmental agency, or it could take over the property in its entirety, as it was property employed in furthering state governmental functions; this might be done without compensation to the municipality affected. See Shirk v. Lancaster City, 313 Pa. 158, 163; Tranter v. Allegheny Co. Authority, 316 Pa. 65.

The general act by which the Commonwealth took over highways and bridges was the Sproul Act of May 31, 1911, P. L. 468, but the liability for maintenance of bridges continued to rest on the county (Com. v. Bird, 253 Pa. 364), until the Acts of 1929 and 1931, P. L. 147,

as above mentioned; after June 1, 1931, all responsibility for construction, maintenance and reconstruction rested with the Commonwealth.

It is quite true that in some cases * we have held that a bridge is part of a highway, and this court directed the various authorities involved to permit, under regulations, certain public service companies to place their facilities thereon, but in no case was the broad proposition presented or considered that is here asserted, that appellee had an irrevocable right without let or hindrance to occupy any highway, street or bridge. The cases do not aid appellee, as no case decided that there was an unconditional right in the utility to use any bridge.

When the Commonwealth took over this bridge in 1931 that act did not by any means enlarge appellee's right thereon or thereover. The Act of 1874 did not reach out for appellee's benefit to attach to every vestige of property subsequently acquired by the Commonwealth.

When this bridge was taken over, it was, as to appellee, in the same position as if the Commonwealth had acquired a piece of property after the Act of 1874. However, it took the bridge with all the burdens the county had placed on it, demonstrating the completeness of ownership in these municipalities as long as the Commonwealth took no steps to take them over. On this bridge it found appellee's wires and equipment. It took the bridge subject to appellee's right to be on the bridge. Appellee's agreement with the county provided the terms under which it could occupy the bridge; prior to that agreement there had been another agreement with appellee's predecessor in title of the same tenor, recognizing the paramount right of the county to the ownership and control of the bridge. When the bridge was destroyed by fire, as a condition of the agreement, appellee's rights terminated. Appellee again recognized the completeness

---

* Beaver Co. v. Central Dist. & Print. Tel. Co., 219 Pa. 340; Point Bridge Co. v. Pitts. Rys. Co., 240 Pa. 105; Peoples Tel. & Tel. Co. v. Turnpike Road, 199 Pa. 411; Beaver v. Traction Co., 229 Pa. 565.

of the county's title and also that thereafter it had no right on the bridge whatever. All these conditions the Commonwealth fell heir to. When the bridge was rebuilt, the only thing appellee could do was to make terms with the State.

Appellee complains however that the regulation as to six months' notice is an unreasonable one. This, because of the fact that the county had given them the right to occupy the bridge, and the Commonwealth had recognized that right by arranging to construct the facilities requested by the telephone company and had fixed the rental value that was to be paid for their use. It also claims the regulation abridged its franchise rights.

The Commonwealth may require permission to be secured with conditions to be met before its property, or that of its subordinate governmental units, may be occupied and used by private persons, such as appellee, for their own profit. If for no other reason the Act of 1874, supra, under which appellee's predecessor was incorporated in 1879, enacted under the authority of article XVI, section 12, of the Constitution contemplates such regulation.

It was expressly provided by the Act of May 1, 1876, P. L. 90, which supplemented the Act of 1874, that the consent of municipalities was required before telephone and telegraph lines could be constructed within their limits and that the municipal authorities "may impose such conditions and regulations as [they] may deem necessary." Appellee's predecessor has felt the effect of this statute: Central D. & P. T. Co. v. Homer City, 242 Pa. 597. The case there presented is analogous to the present situation in certain aspects in that in both cases the utility was occupying the highway through municipal consent. In the Homer City Case it was held that the Act of 1876 was not repealed by the Act of April 22, 1905, P. L. 294.

The Sproul Act of 1911, supra, prohibited telegraph and telephone companies from erecting their lines along

state highways until authority had been secured from the secretary of highways, on such terms as he should prescribe. The acts were under constitutional direction (article XVI, section 12), and appellee's, by a long course of conduct under them, demonstrated that its franchise does not permit it to use the bridge without regulation.

There is no essential difference between the Act of 1876, requiring consent of municipal authorities to occupy streets, and the bridge Act of 1931, P. L. 147, requiring the approval of the governor to accomplish the same purpose; the governor has been substituted as the consenting authority instead of the municipal officials.

The contention that the Act of 1931 is unconstitutional because it is an unlawful delegation of authority or it permits results not uniform or deprives appellee of any substantial right is without merit. The charter granted appellee's predecessor under the Act of 1874, supra, is subject to such regulation as may be deemed necessary.

Moreover, entirely apart from the reasonableness of the regulations imposed by the Administrative Code and the Act of 1931, P. L. 147, appellee is not now in a position to complain. Appellee recognized the county's superior title when it executed its agreements with regard to the old bridge; it operated thereunder for years. That agreement itself was terminable by the county upon giving six months' notice. In this respect, the only fundamental difference between the old agreement with the county which expired with the burning of the bridge and the new agreement is that one is with the county and the other with the Commonwealth. If, indeed, appellee's rights are unlawfully prejudiced by making its license to occupy a state bridge revocable upon six months' notice (and as we have shown above we are not of that opinion) appellee cannot now, in view of its former conduct, successfully assert that fact. The court below erred in holding to the contrary.

The decree of the court below is reversed and proceedings dismissed at the cost of appellee.