Delaware River Port Authority, Appellant, *v.*
Pennsylvania Public Utility Commission.

Argued October 5, 1955.   Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Morris Duane,* with him *Henry T. Reath, John B. Felton,* and *Duane, Morris & Heckscher,* for appellant.

*Albert E. Luttrell,* Assistant Counsel, with him *Miles Warner,* Assistant Counsel, and *Thomas M. Kerrigan,* Acting Counsel, for Public Utility Commission, appellee.

*Ernest R. von Starck,* with him *Samuel G. Miller,* Assistant General Counsel, and *Vincent P. McDevitt,* General Counsel, for electric company, intervenor, appellee.

OPINION BY HIRT, J., January 17, 1956:

The Delaware River Port Authority is a public corporate instrumentality with powers conferred upon it by a compact between the Commonwealth of Pennsylvania and the State of New Jersey pursuant to enabling legislation of both States.[1] In the compact the Authority, (as we shall refer to it) with the consent of the Congress of the United States[2] was empowered to construct a bridge for vehicular traffic across the Delaware River. The construction of the bridge with the approaches, in which the Authority is now engaged, constitutes a major highway project more than 6 miles in length and costing more than 90 millions of dollars. With the approaches it extends westwardly from a connection with Black Horse Pike in Camden County, New Jersey, across the Delaware River to a point near Twenty-eighth Street and Vare Avenue in the City of Philadelphia. The suspension bridge itself is approximately 3,400 feet in length, crossing the river from Gloucester, New Jersey, to a point near the intersection of Packer and Delaware Avenues in Philadelphia. On the Pennsylvania side the approach to the bridge, for the most part an elevated highway, will be about three miles in length and will cross above grade over a number of important streets in Philadelphia. At a point in the city about 972 feet west of the western anchorage of the bridge the elevated approach will cross Delaware Avenue about 57 feet above street level. In the bed of Delaware Avenue were located the tracks of the Schuylkill East Side Railroad Company, operated by The Baltimore and Ohio Railroad Company, and tracks

---

[1] By the Pennsylvania Act of August 10, 1951, P. L. 1206, 36 PS §3503 and by the Act of the State of New Jersey, June 26, 1951, chapter 287, P. L. 1951.

[2] Public Law 574, 82nd Congress, Chapter 922, 2nd sessions, July 17, 1952.

of The Pennsylvania Railroad. In addition to the railroad tracks in the bed of Delaware Avenue, and within the crossing limits, there were two 13,200 volt aerial transmission lines of the Philadelphia Electric Company, also a six inch water main and signal conduits of The Pennsylvania Railroad Company as well as an electric line of the City of Philadelphia which was carried on the Electric Company's poles. All of these utility facilities have had to be relocated to make way for a pier supporting the bridge approach. It was the Authority and not the city which directed the Philadelphia Electric Company to move its facilities.

The Authority agreed to reimburse the City of Philadelphia for the expense incident to changing the location of the city's existing aerial transmission line and agreed to compensate both railroads for the costs incurred by them in relocating their tracks in the crossing. In addition the Authority agreed to pay to The Pennsylvania Railroad the cost of relocating its water main and signal conduits, amounting to about $34,000. The Authority however refused to pay the cost, estimated at $31,000, of relocating the Philadelphia Electric Company lines in the crossing, for the reason asserted that it had been advised by its counsel that it is not liable for the expenditure as a matter of law. The relocation costs of Philadelphia Electric Company at other crossings, raising the same questions, will be before the Commission in other proceedings which will involve additional expenditures of a total of about $289,000. To put this and other questions at rest in the relocation of facilities then in the bed of Delaware Avenue, the Delaware River Port Authority on June 25, 1954, petitioned the Pennsylvania Public Utility Commission under §409 of our Public Utility Code of May 28, 1937, P.L. 1053, as amended, 66 PS §1179, for ". . . approval of the construction of a *crossing* where that

part of the Delaware River Bridge constructed as proposed will cross above the grade of the tracks of The Pennsylvania Railroad Company located in the bed of Delaware Avenue approximately 85' south of the intersection of Delaware and Packer Avenues, in the City of Philadelphia, *and the allocation of the costs and expenses incident there to.*" (Emphasis added). Section 411 of the Code, 66 PS §1181, provides that the Commission shall determine how costs shall be allocated. The Public Utility Commission after full hearing approved the application of the Authority for the crossing over Delaware Avenue in accordance with the plans submitted by it and as to Philadelphia Electric Company, the Commission ordered that the relocation of its facilities be made "at the sole cost and expense of Delaware River Port Authority." This is the Authority's appeal from that part of the order imposing upon it the cost of relocating these facilities of Philadelphia Electric Company.

The Authority, having invoked the jurisdiction of the Commission in this proceeding for approval of the crossing, as planned, under §409 of the Code and for the "allocation of costs and expenses" of relocation of facilities under §411, now takes the anomolous position that the Commission is without "complete jurisdiction" to accomplish what the Authority had asked it to do in its petition initiating this proceeding. We will not decide whether this appeal well might be dismissed for the reason that the Authority having invoked the authority of the Commission cannot now complain of its order on the ground that it lacked jurisdiction; but compare *Penna. P. & L. Co. v. Shenandoah Boro.,* 362 Pa. 43, 66 A. 2d 290; *Henderson v. Delaware River, etc., Comm.,* 362 Pa. 475, 491, 66 A. 2d 843 and *Montgomery Co. B. Assn. v. Rinalducci,* 329 Pa. 296, 298, 197 A. 924. It is clear that the Commission had the authority to

allocate relocation expense of the Electric Company's facilities against the Authority. The order of the Commission accordingly will be affirmed.

The Philadelphia Electric Company maintained two 13,200 volt aerial transmission lines on poles in the crossing. These facilities had been constructed and located within the lines of Delaware Avenue in accordance with "standard permits" issued by the City of Philadelphia. As between the city and the Electric Company if a change in the location of these facilities had been made necessary by construction work of the municipality the Electric Company would have been obliged to make the change at its expense, by terms of the "rent-free license" under which it occupied a part of the bed of Delaware Avenue. But the relocation in the present instance was not made necessary by the construction of any water or gas mains, sewers, or other municipal work in Delaware Avenue and the fact that the Electric Company might have been financially obligated to the City of Philadelphia under other circumstances cannot charge it with liability for the cost of changes ordered solely by the Authority. Moreover, an action in trespass for damages would not have been an appropriate remedy to determine the question of liability. And the Authority was not relegated to the general law of eminent domain for a determination of the question. The Electric Company did not have a vested interest in Delaware Avenue and no land was taken.

Section (a) 409 of the Public Utility Law requires an order of approval by the Commission prior to the construction of a highway across the facilities of a public utility. In sub-section (b) "The commission is hereby vested with exclusive power . . . to determine . . . the manner in which such crossing may be constructed. . ." And §409(c) provides "Upon its own motion or upon complaint [as in this proceeding] the

commission shall have *exclusive power* after hearing, upon notice to all parties in interest, . . . to order any such crossing . . . to be relocated or altered, . . . upon such reasonable terms and conditions as shall be prescribed by the commission . . . The commission may order the work of construction, relocation, alteration, . . . of any crossing aforesaid to be performed in whole or in part by any public utility or municipal corporation concerned or by the Commonwealth." (Emphasis added). Where as in the present case the Commission does not order the work to be done by one or more of the affected parties at their expense the question becomes one of compensation. Section 411 provides "(a) The compensation for damages which the owners of adjacent property taken, injured, or destroyed may sustain in the construction, relocation, alteration, protection, or abolition of any crossing under the provisions of this act, shall, after due notice and hearing, be ascertained and determined by the commission. Such compensation, as well as the expense of such construction, relocation, alteration, protection, or abolition of any crossing, shall be borne and paid, as hereinafter provided, by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine, . . ."

The legislature in the Act of August 10, 1951, P.L. 1026, 36 PS §3503 stipulated that the compact "shall become binding and shall have the force and effect of a statute of the Commonwealth of Pennsylvania." But nowhere in the above act or in the compact is there any evidence of an intention to supersede the police power of the Commonwealth by depriving the Commission of the exclusive jurisdiction vested in it by §§409 and 411 of the Public Utility Code over the crossing projects of the Authority, within the boundaries of the

Commonwealth. The Pennsylvania approach to the bridge is a part of the bridge itself (*Pittsburgh & Shawmut R. R. Co. v. Pa. P. U. C.,* 141 Pa. Superior Ct. 233, 14 A. 2d 903) and together they are a part of the highway system of the Commonwealth. In exercising the powers conferred upon it by the Commonwealth, the Authority acts as the agent of the Commonwealth. *Delaware River Joint Commission Case,* 342 Pa. 119, 19 A. 2d 278. And since the Authority is the agency selected by the Commonwealth to construct the Pennsylvania approaches to the bridge including the crossing project here involved, the Authority stands in the place of the Commonwealth and is subject to the payment of costs incident to the expense of relocation of facilities in the crossing when assessed against it by the Commission. Cf. *Dept. of Highways v. Pa. P. U. C.,* 141 Pa. Superior Ct. 376, 14 A. 2d 611.

The Commission had the power to assess the Authority with the cost of relocating the facilities here involved and we are bound to affirm the order as valid, unless it is unreasonable. Such order in the exercise of the Commission's administrative discretion in accordance with the statute, will not be reversed if reasonable. *Tarentum Borough v. Pa. P. U. C.,* 171 Pa. Superior Ct. 156, 90 A. 2d 853. All of the many authorities are to the same effect.

In the light of the circumstances the Commission's order is just and reasonable. The Authority agreed to reimburse the railroads and the city for the expense of relocating their facilities. The Electric Company alone was singled out by the Authority to bear the cost of moving its facilities. No just ground for the discrimination appears. Funds are available for the payment of relocation of the Electric Company's facilities at all crossings. The cost of the bridge and its approaches will be met from the proceeds of a $100,000,000 issue of

the Authority's revenue bonds. The total cost, according to this record, with a liberal allowance for contingencies, will be less than that amount and the Authority has other resources. The bond issue will be self-liquidating from tolls collected from those who use it in vehicular traffic between the two States. For this reason alone the bridge toll payers and not the Electric Company should bear the costs of relocating the facilities made necessary by the construction of the bridge. If the Electric Company were obliged to pay these and like costs at other crossings which will amount to a total of about $320,000, that utility would be entitled to add the amount to its rate base, to be recovered from its rate payers in addition to a fair return on the total expenditure over the life of the new facilities. The rate payers of the Electric Company as such will receive no benefit from the relocation of its facilities nor from the completion of the project and there is no reason why they should contribute to its cost. The bridge is an interstate link in a system of national highways. Tolls paid by those who use the bridge will be adequate to meet the entire costs incident to its construction. They will be the direct beneficiaries of the completed project and it is they alone who should pay.

We have considered other questions raised by appellant and find no merit in any of them.

Order affirmed.