Department of Highways of Commonwealth, Appellant, *v.* Pennsylvania Public Utility Commission.

2

Argued March 11, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Joseph J. Laws*, Special Counsel, with him *John R. Rezzolla, Jr.*, Chief Counsel, *Joseph L. Donnelly*, Deputy Attorney General, and *Thomas D. McBride*, Attorney General, for Department of Highways, appellant.

*Miles Warner*, Assistant Counsel, with him *Jack F. Aschinger*, Assistant Counsel, and *Thomas M. Ker-*

*rigan,* Acting Counsel, for Public Utility Commission, appellee.

*Walter T. Wardzinski,* with him *Thomas J. Munsch, Jr.* and *Henry G. Wasson, Jr.,* for Duquesne Light Company, intervening appellee.

*David Dunlap,* with him *John T. Brown* and *H. Robert Barnes,* for Equitable Gas Company, intervening appellee.

OPINION BY WOODSIDE, J., November 18, 1957:

This is an appeal from an order of the Pennsylvania Public Utility Commission imposing upon the Pennsylvania Department of Highways a portion of the cost of relocating utilities ordered removed from a public highway by the commission in connection with a highway-railway crossing improvement.

The question is whether the commission has the power to impose upon the Commonwealth any of the cost of relocating the utilities which are within the right-of-way of a public highway.

The question is primarily one of statutory construction, but it also involves basic governmental considerations, and is important because the determination may ultimately involve millions of dollars.

The Department of Highways desired to relocate, widen and improve state highway routes 70 and 72 in Etna Borough, Sharpsburg Borough and Shaler Township, Allegheny County, and to construct a limited access highway across the tracks of The Baltimore & Ohio Railway Company within the limits of these municipalities. Because a crossing improvement was involved, the Department of Highways, in compliance with the Public Utility Law, petitioned the Pennsylvania Public Utility Commission for approval of its plans and asked the commission to allocate the costs.

After a hearing, the commission filed its order which contained 41 paragraphs dealing with numerous phases of the project and its cost. We are concerned here with paragraph 35 which ordered the Department of Highways to pay Duquesne Light Company and Equitable Gas Company 60% of the cost of relocating their facilities which were within the limits of existing highways. In paragraph 15 the commission ordered the public utility companies to remove and relocate these facilities. Commissioner Houck voted against the allocation of the cost of relocating these facilities "stating that he is of the opinion that where (public utility companies') facilities occupy public streets the cost of removal and reconstruction should be borne by the utilities."

The commission ordered Peoples Natural Gas Company and The Bell Telephone Company of Pennsylvania, "having so agreed", to relocate their facilities within the limits of any existing highways at their own cost and expense. It also ordered the Department of Highways, "having agreed to do so" to pay the cost of relocating the utilities owned and operated by the Borough of Etna, and to pay for property damages. Involved in these damages was the cost of the necessary removal and relocating of utilities not located on the highway right-of-way. The commission also ordered the Department of Highways to pay The Baltimore and Ohio Railroad Company a substantial part of the cost of relocating its tracks.

The Department of Highways appealed from the allocation of costs made in paragraph 35 of the commission's order. The Equitable Gas Company and Duquesne Light Company intervened as appellees and, along with the Pennsylvania Public Utility Commission, filed briefs and presented oral arguments.

It may be helpful to relate briefly the historical background of the locating and relocating of the facilities of public utility companies within highway rights-of-way.

It has long been the policy of this Commonwealth, and most other states, to permit public utility companies to place their facilities upon highway rights-of-way, so long as such facilities do not interfere with the public use of the highways. See *Bell Telephone Company of Pennsylvania v. Lewis,* 317 Pa. 387, 177 A. 36 (1935). Use of the streets by the public utility companies is subject to the earlier and superior rights of the public. It has been held that the police *power to control and regulate* the highways so as to protect the public health and safety is one that cannot be bargained away by legislative or municipal grant. Such authority is both paramount and inalienable. *Scranton Gas and Water Company v. Scranton,* 214 Pa. 586, 590, 591, 64 A. 84 (1906).

The public utility companies so using the highway rights-of-way do not obtain any property rights therein. *Philadelphia Electric Co. v. Philadelphia,* 301 Pa. 291, 302, 152 A. 23 (1930) ; *Bell Telephone Company of Pennsylvania v. Pennsylvania Public Utility Commission,* 139 Pa. Superior Ct. 529, 534, 12 A. 2d 479 (1940). The Commonwealth, through any designated agency, may compel the public utility companies to remove or relocate their facilities at the company's expense. *Philadelphia Suburban Water Co. v. Pennsylvania Public Utility Commission,* 168 Pa. Superior Ct. 360, 366, 78 A. 2d 46 (1951) ; *Keystone Telephone Co. v. Philadelphia & Reading Railway Co.,* 56 Pa. Superior Ct. 384, 386 (1914).

It does not follow, however, as we shall hereafter point out, that the Commonwealth does not have *the power to pay* the public utility companies the cost of

relocating such facilities under certain circumstances providing it expresses the intent to do so through statute. See *Soldiers and Sailors Memorial Bridge,* 308 Pa. 487, 491, 162 A. 309 (1932). For years the taxpayers have been paying railroad companies for the cost of relocating their facilities erected on highway rights-of-way, and this has been done even when the dangerous condition sought to be eliminated was originally caused by the railroad's construction over a highway which prior thereto had been safe. *Lancaster County v. Public Service Commission,* 77 Pa. Superior Ct. 495, 500 (1921); *Tarentum Borough v. Pennsylvania Public Utility Commission,* 171 Pa. Superior Ct. 156, 161, 90 A. 2d 853 (1952).

The refusal to pay for the relocation of utilities, other than railroads, is based upon the theory that inasmuch as public utility companies are not required to pay for the use of the highway, the Commonwealth has no obligation to them when it requires them to change their facilities because of changes which the Commonwealth desires to make in the highway. It might also be argued that if the Commonwealth was required to pay the cost of relocating utilities, it would become an element of consideration in each proposed construction, and in some cases the cost of such relocation might stand in the way of highway improvement.

The cost of relocating the utilities enters into the rate structure of the public utility companies, and is paid for by the companies' rate payers. It is error to intimate or suggest that such cost is borne by the officials or even the stockholders of the companies. The question of whether the cost of the required relocation of telephone poles erected upon the rights-of-way with authority of the Commonwealth, should be paid on the telephone bills or at the gasoline pumps has been a matter of governmental concern for some years. The pub-

lic, and as a general rule practically the same segment of the public, pays either way, for nearly everybody pays both utility bills and taxes into the Motor License Fund.

When Congress passed the Federal-Aid Highway Act of May 6, 1954, c. 181, P. L. 350, 68 Stat. 71, and the United States Government entered upon its extensive road program, attention was focused on the problem anew. The Highway Research Board made an analysis of the legal aspects of the relocation of public utilities due to highway improvement which is contained in its Special Report 21.

The federal government is bearing approximately 50% of the cost of the highway improvement before us. On some other highway construction it bears 90% of the cost. The federal law presently provides that railroads which are required to eliminate grade crossings of their tracks within public highways are entitled to reimbursement regardless of the state laws on the subject; but it does not presently provide for reimbursement of the cost of other utility relocations, except in those states where the state is obliged by law or otherwise, to bear this cost. Thus, if state "A" receives from the federal government 90% of the cost of utility relocating on inter-state highways because the policy of that state is to bear this cost, while state "B" receives nothing from the federal government for utility relocations because its policy is not to bear this cost, the citizens of state "B" will pay on their utility bills for utility relocations in their state, and will also pay in their federal gasoline tax for a part of the cost of relocating utilities in state "A".

This situation encouraged the introduction of bills in various state legislatures to require the state (and thus the federal government) to pay for the relocation of utilities located within the highway rights-of-way.

Opposition to this proposed legislation arose among automobile clubs, and others, who saw in it a substantial reduction of available funds for desperately needed highway construction. For this and other reasons the proposals in most states were not enacted into law.

In Pennsylvania House Bill No. 984 (Session of 1957) passed the House and Senate, but was vetoed by the Governor July 16, 1957. The bill provided that whenever the Secretary of Highways should determine that any utility located in, on or above, any highway should be relocated to accommodate a reimbursable federal-aid highway project the cost of relocation should be paid by the Commonwealth out of the Motor License Fund.

The public utility companies have no constitutional right to *demand* from the Commonwealth the cost of relocating their facilities located on a public highway. They acquire no property right in the highways: See cases cited above. They cannot claim costs of such relocation as consequential damages, without statutory authority. *Westmoreland Chemical & Color Co. v. Public Service Commission,* 294 Pa. 451, 458, 144 A. 407 (1928); *Pennsylvania Co. v. Philadelphia,* 351 Pa. 214, 217, 40 A. 2d 461 (1945). They cannot recover such relocation costs under the common law.

Equitable Gas Company and Duquesne Light Company, intervening appellees, do not contend that they have any property right in the highway rights-of-way by virtue of which they can *compel* the Commonwealth to pay for relocating their facilities located on public highways. It is their contention that the Commonwealth, through the legislature, has authorized the Pennsylvania Public Utility Commission to determine in crossing improvement cases whether the facts merit the payment by the Commonwealth of all or a part of the cost of relocating the utilities which it orders re-

located, and if so, to order the payment of such cost by the Department of Highways.

The Commonwealth has exercised its control over its highways through many different agencies, including municipalities, counties, the Department of Highways, The Pennsylvania Public Utility Commission, the Delaware River Joint Commission, the Delaware River Port Authority and others. *Bell Telephone Co. of Pennsylvania v. Lewis,* supra, 317 Pa. 387, 177 A. 36 (1935); the *Delaware River Joint Commission Case,* 342 Pa. 119, 19 A. 2d 278 (1941); the *Delaware River Port Authority v. Pa. Public Utility Commission,* 180 Pa. Superior Ct. 315, 119 A. 2d 855 (1956).

The legislature placed "matters pertaining to the state highway system, its construction and maintenance, under the authority of the Department of Highways, subject to the limitation that where any highway, state, county, or township, is crossed by the facilities of a public utility, then matters pertaining to the crossing are subject to the exclusive jurisdiction of the Public Utility Commission." *Somerset County v. Pennsylvania Public Utility Commission,* 132 Pa. Superior Ct. 585, 598, 599, 1 A. 2d 806 (1938); *Department of Highways v. Pennsylvania Public Utility Commission,* 141 Pa. Superior Ct. 376, 14 A. 2d 611 (1940). The legislature gave this control of highways at railroad crossings to the Public Service Commission by The Public Service Company Law of July 26, 1913, P. L. 1374, and later to the Pennsylvania Public Utility Commission by the Public Utility Law of May 28, 1937, P. L. 1053, which repealed the Public Service Company Law.

The question facing us in this case is whether the Public Utility Law authorizes the Pennsylvania Public Utility Commission to impose upon the Commonwealth any of the cost of relocating utilities within the

highway rights-of-way which it orders relocated in railroad crossing improvements. This, as we have noted above, is a matter of statutory construction.

Section 409 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1179 vests the Pennsylvania Public Utility Commission with exclusive power to appropriate property for rail-highway crossings and to determine and prescribe the points of crossing and the manner and condition under which such crossings shall be maintained. Under this section, "The commission may order the work of construction, relocation, alteration, protection, or abolition of any crossing aforesaid to be performed in whole or in part by any public utility or municipal corporation concerned or by the Commonwealth."

Section 411 of said act (66 PS §1181), provides, inter alia: "Such compensation (for damages which the owners of adjacent property taken, injured, or destroyed may sustain), as well as *the expense of such construction,* relocation, alteration, protection, or abolition of any crossing, shall be borne and paid, as hereinafter provided, by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine, unless such proportions are mutually agreed upon and paid by the interested parties. Any party to the proceeding dissatisfied with the determination of the commission may appeal therefrom, as provided in section one thousand one hundred one of this act, and for this purpose is hereby authorized to sue the Commonwealth:" (Emphasis supplied).

What is meant by "expense of such construction," which the legislature says "shall be borne and paid . . . by the public utilities or municipal corporation con-

cerned, *or by the Commonwealth,* in such proper proportions as the commission may . . . determine"? If the removal of the facilities of the public utility company from the right of way is an "expense of the construction" of the crossing improvement, then the legislature has authorized the Pennsylvania Public Utility Commission to impose such cost, or a part thereof, upon the Commonwealth.

In building a highway it is as necessary to remove the utilities on the right-of-way, including those on the existing highways, as it is to remove the trees and to make the fills and cuts and pave the roadway. It seems to us that as the expression would be commonly understood, "expense of such construction" would include the cost of the necessary relocation of utilities.

This Court has so held in *Delaware River Port Authority v. Pennsylvania Public Utility Commission,* supra, 180 Pa. Superior Ct. 315, 119 A. 2d 855, allocatur denied by the Supreme Court, 180 Pa. Superior Ct. xxix (1956). In that case the Delaware River Port Authority, as an agency of the Commonwealth, petitioned the Pennsylvania Public Utility Commission under Section 409 of The Public Utility Law, supra, 66 PS §1179, for approval of the construction of that part of the south Philadelphia Delaware River Bridge, now known as the Walt Whitman Bridge, which crosses the tracks of The Pennsylvania Railroad Company and The Baltimore and Ohio Railroad Company in Delaware Avenue, Philadelphia, and for the allocation of the costs and expenses incidental thereto. The Authority agreed to reimburse the City of Philadelphia for changing the location of the city's existing aerial transmission line, and to compensate the railroads for the costs incurred by them in relocating their tracks and water main and signal conduits, but refused to pay the costs of relocating the Philadelphia Electric Company lines

because such lines were within the rights-of-way of the streets of the City of Philadelphia.

The Public Utility Commission, after hearing, approved the application of the Authority for the crossing, and ordered the relocation of the facilities of the Philadelphia Electric Company at the sole cost and expense of the Authority, which thereupon appealed the commission's order. Judge HIRT, speaking for a unanimous Court, said, "It is clear that the Commission had the authority to allocate relocation expense of the Electric Company's facilities against the Authority." pp. 319, 320.

Observing that the Electric Company did not have a vested interest in Delaware Avenue, and none of its land was taken, this Court, nevertheless, held that the Pennsylvania Public Utility Commission could impose the cost of relocating these facilities upon the Authority. It was there noted that the roadway of the Authority was "a part of the highway system of the Commonwealth," and that "the Authority acts as the agent of the Commonwealth." "The Authority," we said, "stands in the place of the Commonwealth and is subject to the payment of costs incident to the expense of relocation of facilities in the crossing when assessed against it by the Commission." p. 322.

The Department of Highways suggests that in the above case we did not sufficiently consider whether section 411 of the Public Utility Law, supra, 66 PS §1181, imposes liability on the Commonwealth to reimburse public utility companies for relocating their facilities from the highway. We did not specifically state it in the opinion, but the case had to rest upon the legal conclusion that the removal of utilities from the rights-of-way of a public highway in a crossing improvement was an "expense of such construction," as

the term is used in section 411 of the Public Utility Law, supra.

In the case now before us the Department of Highways acts as the agent of the Commonwealth, and "stands in place of the Commonwealth." *Department of Highways v. Pennsylvania Public Utility Commission,* supra, 141 Pa. Superior Ct. 376, 384, 387, 14 A. 2d 611 (1940). The utilities are located in municipal streets as they were in the *Delaware River Port Authority* case, supra.

Prior to the *Delaware River Port Authority* case, supra, the precise question here involved was never before the appellate courts of this Commonwealth. Apparently, prior to that time the Pennsylvania Public Utility Commission had never imposed upon the Commonwealth the costs of relocating utilities within the rights-of-way, except railroads. Thus the question did not reach the appellate courts.

However, in *Philadelphia Suburban Water Co. v. Pennsylvania Public Utility Commission,* supra, 168 Pa. Superior Ct. 360, 368, 369, 78 A. 2d 46 (1951) this Court did not question the power of the Commission to allocate cost of utility relocation against the Commonwealth. In that case the commission refused to allocate any of the cost of utility relocation against the Commonwealth. The appellant contended that by virtue of the act under which it was incorporated it had a franchise right to occupy all highways, and that this was a property right which under the constitution could not be taken without compensation. This Court rejected the appellant's argument, but it assumed throughout that the power to impose a part of these costs upon the Commonwealth did exist.

Judge RENO, speaking for this Court, said: "(The Public Utility Company) has been ordered to remove

its pipes at its own expense; that is, in apportioning the cost of the construction of the grade crossings, the Commission has determined that the public utilities concerned, including appellant but excluding the railroads, shall severally bear the expense incurred in the removal of their facilities.

"These sections authorize the Commission to compel public utilities, municipalities concerned, or the Commonwealth, 'jointly or in several allotments' to pay the expense for eliminating grade crossings. Westmoreland C. & C. Co. v. P. S. C., 294 Pa. 451, 144 A. 407; and see Pennsylvania Co., etc. v. Philadelphia, 351 Pa. 214, 40 A. 2d 461. The law does not require that the total expense be prorated among the respective parties upon a percentage basis; the only requirement is that the order be just and reasonable. Erie R. R. Co. v. P. S. C., 271 Pa. 409, 114 A. 357. *The inclusion of the Commonwealth as a party upon whom costs of construction may be imposed does not of itself make it liable for compensation.* 'The State may ex gratia pay a part of the damage if it wishes to, but is not under legal compulsion; . . .' Westmoreland case, supra, p. 462. *The Commonwealth is compelled to pay only by virtue of a Commission order assessing the whole or part of the expense upon it.* See Dept. of Highways v. P. U. C., 141 Pa. Superior Ct. 376, 14 A. 2d 611." (Emphasis supplied)

In *Pennsylvania Railroad Company v. Pennsylvania Public Utility Commission,* 136 Pa. Superior Ct. 1, 4, 5, 7 A. 2d 86 (1939) this Court said: "The State, in the exercise of its police power, has entrusted to the Public Utility Commission, . . . the power . . . to determine how the expenses are to be borne 'by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may . . . determine, unless such proportions

are mutually agreed upon and paid by the interested parties.' "

That the legislature intended to authorize the Pennsylvania Public Utility Commission to impose utility relocation costs upon the Commonwealth in proper cases is also evident from the fact that in passing The Public Utility Law of May 28, 1937, P. L. 1053 it dropped from the corresponding sections in the Public Service Company Law of July 26, 1913, P. L. 1374, Article V, Section 12, the following: "where the order of the commission shall . . . require, as incidental thereto, a relocation . . . of . . . facilities of any telegraph, telephone, gas, electric light, waterpower, water pipe-line, or other public service company, said company shall, *at its own expense,* relocate, change, or remove such structures, equipment, or other facilities, in conformity with the order of the commission; . . ." (Emphasis supplied).

We see no merit in the appellant's contention that the commission's interpretation of section 411 conflicts with sections 917 and 918 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1357; §1358. If there would be any conflict, section 411 would still be effective, for section 917 states: "Except as otherwise expressly provided."

The Department of Highways has cited numerous cases which, along with many others both within and without this Commonwealth, hold that the utility companies acquire no easement or property right when they place their facilities within the limits of a highway right-of-way. Most of these we cited above, but as we pointed out, they deal with a different question than the one now before us.

We do not see the relevancy of *Butler Water Company's Petition,* 338 Pa. 282, 13 A. 2d 72 (1940), and

we would not refer to it if it had not been called to our attention in all four briefs. The facilities of the Butler Water Company were on the company's land, part of which was appropriated under an order of the Public Service Commission in connection with a crossing improvement. The water company petitioned for viewers, who made an award for the land taken, and a separate and additional award for the relocation of the company's water pipes. The Supreme Court there held that the true measure of damages was the difference between the value of the property before and after the appropriation, and that the cost of removal of the utilities was not a separate element of damage, but could be taken into account in fixing the before and after value of the property taken. As the Court was dealing with the measure of damages involved in the taking of the utility company's land, what was there said or held has little significance in the case now before us.

It is for the legislature to determine whether the public utility companies shall pay for the removal of their facilities placed within the rights-of-way of highways. See Opinion of the Justices, 132 A. 2d 613 (N.H. 1957). As we view The Public Utility Law, supra, the legislature expressed therein its intention that the Pennsylvania Public Utility Commission should have the power to impose a portion of the cost of such relocation upon the Commonwealth in utility crossing improvements. As this Court said in the *Delaware River Port Authority* case, supra, 180 Pa. Superior Ct. 315, 323, 119 A. 2d 855 (1956): "The rate payers of the Electric Company as such will receive no benefit from the relocation of its facilities nor from the completion of the project . . . [The users of the highway] will be the direct beneficiaries of the completed project."

The appellant contends that if the Public Utility Law does authorize the commission to impose upon the Commonwealth the cost of relocating utilities within highway rights-of-way, such statutory provision is unconstitutional.

First, appellant contends that the statutory provision violates article III, section 3 of the Pennsylvania Constitution which provides: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

The title of the Public Utility Law of May 28, 1937, P. L. 1053, is one of the longest found in the pamphlet laws. It contains the following pertinent language: ". . . conferring upon the commission the exclusive power to regulate or order the construction, alteration, relocation, protection, or abolition of crossings of facilities of public utilities, and of such facilities by or over public highways, to appropriate property for the construction or improvement of such crossings, and to award or apportion resultant costs and damages."

The title of an act need not be an index nor a synopsis of its contents. All that is required is that the title shall contain words sufficient to cause one having a reasonably inquiring mind to examine the act in order to determine whether or not he may be affected by it. Unless a substantive matter entirely disconnected with the named legislation is included therein, the act does not fall within the constitutional inhibition. *Boyertown Burial Casket Co. v. Commonwealth*, 366 Pa. 574, 590, 79 A. 2d 449 (1951); *Commonwealth v. Firemen's Fund Ins. Co.*, 369 Pa. 560, 563, 564, 87 A. 2d 255 (1952).

It seems to us that one with a reasonably inquiring mind, upon learning from the title of the Public Utility Law that the commission had exclusive power to

regulate the construction of crossings of facilities of public utilities and *to award or apportion resultant costs* and damages, would examine the act to determine upon whom the resultant costs could be apportioned, and could not be surprised to learn that the Commonwealth was one of the parties against whom such costs could be apportioned.

Next the appellant contends that the aforesaid statutory provision violates article III, section 11 and article IX, section 6 of the Pennsylvania Constitution.

Article III, section 11 provides: "No bill shall be passed . . . providing for the payment of any claims against the Commonwealth without previous authority of law."

Article IX, section 6, provides: "The credit of the Commonwealth shall not be pledged or loaned to any individual company, corporation or association . . .".

The only case cited by the appellant to support its contention is *Harbold v. Reading,* 355 Pa. 253, 49 A. 2d 817 (1946). In that case a contractor accepted as payment bonds which provided: "This bond, principal and interest, is based solely and rests alone for its security and is payable only out of the assessments made and levied upon the properties benefited by the local improvement for which this bond is issued and from no other fund." Although most of these bonds were ultimately redeemed, a few remained unpaid. An act of the legislature requiring the municipality to pay these bonds out of its general fund was declared unconstitutional as a gratuity, and was held to violate article III, section 11 of the Constitution in that it gave extra compensation to a contractor *after* the services were rendered. This case would apply to the payments here in question had the General Assembly, *after* the utilities had been relocated, enacted the

legislation providing for the payment by the Commonwealth of the relocation costs.

When the Commonwealth, in order to improve a highway crossing a railroad, orders a public utility company to relocate its facilities placed within the right-of-way with the Commonwealth's permission, the payment, under statutory authority, of a part of the cost of such relocation is a part of the construction cost of the highway improvement, and is not a gratuity of the type prohibited by the Constitution. It is ex gratia only in the sense that the *Constitution does not require* the Commonwealth to pay such cost.

The appellant further contends that the aforesaid statutory provision violates article IX, section 18 of the Constitution. This is the so-called gasoline tax diversion amendment which provides that "All proceeds from gasoline and other motor fuel excise taxes, motor vehicle registration fees . . . shall be . . . used solely for construction, reconstruction, maintenance and repair of and safety on public highways and bridges . . . ."

If the cost of relocating utilities is an expense of the construction of a highway crossing improvement, the money used for such payments is for construction and safety on public highways. If it is not "an expense of such construction," the payment is not authorized by statute. Our holding on the question of statutory construction answers the constitutional question. Furthermore, the appellant is here impaled upon the horns of a dilemma. In this very case it has agreed to pay the borough of Etna the cost of relocating its utilities. If the cost of relocating utilities from rights-of-way is not a part of the cost of construction of the highway then the making of the agreement by the appellant was a violation of the Constitution.

One of the questions stated in the appellant's brief is: "Is not the assessment of such costs against the Department of Highways in this case arbitrary, unreasonable and capricious?" However, the appellant does not state in what respect or for what reason the order is arbitrary, unreasonable and capricious. Bell Telephone Company of Pennsylvania and The Peoples Natural Gas Company agreed to pay for the relocation of their facilities, and the Department of Highways agreed to pay for the relocation of the utilities of the borough of Etna. The Pennsylvania Public Utility Commission, under section 411 of the Public Utility Law, supra, 66 PS §1181, has authority to proportion costs "unless such proportions are mutually agreed upon and paid by interested parties."

The order of the commission requires Equitable Gas Company and Duquesne Light Company to pay 40% of the cost of relocating their respective facilities, and the Department of Highways to pay 60%. On its face this does not appear to be unreasonable. See *Pennsylvania Railroad Company v. Pennsylvania Public Utility Commission*, 154 Pa. Superior Ct. 86, 90, 35 A. 2d 588 (1944).

The Pennsylvania Public Utility Commission's allocation of the cost of construction, including the cost of relocating the utilities, must be reasonable and in conformity with law. *Department of Highways v. Pennsylvania Public Utility Commission*, 179 Pa. Superior Ct. 376, 384, 116 A. 2d 855 (1955). Where it does not appear that the commission has abused its discretion the appellate courts will not disturb its order. *Lancaster County v. Public Service Commission*, supra, 77 Pa. Superior Ct. 495 (1921).

As a general rule, the rate payer of the utility as such receives no benefits from the relocation of the facilities; it is the motorist who will be the direct bene-

ficiary. *Delaware River Port Authority v. Pennsylvania Public Utility Commission,* supra, 180 Pa. Superior Ct. 315, 323, 119 A. 2d 855 (1956). On the other hand, the commission may not ignore the fact that the highways are primarily for the travelling public, and that their use by public utility companies is a subordinate use, permitted by the Commonwealth without cost except for permit fees. See Act of June 1, 1945, P. L. 1242, §411, 36 PS §670-411.

In proportioning costs the commission must consider, along with other elements, the free use of the highways by the public utility companies. The allocation of 60% of the cost of relocating utilities to the Department of Highways in this case does not appear to be so high that it amounts to an abuse of discretion and except to argue that the commission had no authority to make *any* order against it for these costs, the appellant has presented no specific reason to support its allegation that the proportion is arbitrary, unreasonable or capricious.

Summarizing, we note that when a public utility company places its facilities in a public highway, it can be required, by the proper governmental authority, to remove or relocate such facilities at its own expense. It acquires no property rights in the highways by virtue of the permission of the Commonwealth to use its highways, and has neither a constitutional nor a common law right to recover the cost of the removal or relocation of its facilities. Under conditions here present, the legislature can constitutionally change the common law rule, and provide that when the Commonwealth, in order to improve its highways orders a public utility company to remove its facilities from the right-of-way, the Commonwealth shall pay such costs, or a part thereof, itself when the facts warrant such payment. The legislature in section 411 of the Pub-

lic Utility Law of May 28, 1937, P. L. 1053, 66 PS §1181 did so provide. There is nothing to indicate that the assessing of 60% of the cost of relocating the intervening appellees' facilities in this case was arbitrary, unreasonable or capricious.

Order affirmed.

DISSENTING OPINION BY RHODES, P. J.:

I am obliged to dissent in this case as the majority opinion would permit the diversion of the Motor License Fund without any authorization by the Legislature and contrary to Article IX, §18 of the Constitution.

I find no power or authority in the Pennsylvania Public Utility Commission to impose upon the Commonwealth of Pennsylvania a portion of the cost of relocating utility facilities which are located on a public highway at a highway-railroad crossing. Sections 409 and 411 of the Public Utility Law, 66 PS §§1179, 1181, contain no such authority. Such interpretation by the majority exceeds the intent of the Legislature in enacting them.

I agree with the basic principles set forth in the majority opinion relative to the use of highways by utilities. The majority errs, however, in overlooking those principles in its interpretation of sections 409 and 411 of the Law.

The majority opinion states: "It has long been the policy of this Commonwealth, and most other states, to permit public utility companies to place their facilities upon highway rights-of-way, so long as such facilities do not interfere with the public use of the highways. See Bell Telephone Company of Pennsylvania v. Lewis, 317 Pa. 387, 177 A. 36 (1935). Use of the streets by the public utility companies is subject to the

earlier and superior rights of the public. It has been held that the police *power to control and regulate* the highways so as to protect the public health and safety is one that cannot be bargained away by legislative or municipal grant. Such authority is both paramount and inalienable. Scranton Gas and Water Company v. Scranton, 214 Pa. 586, 590, 591, 64 A. 84 (1906).

"The public utility companies so using the highway rights-of-way do not obtain any property rights therein. Philadelphia Electric Co. v. Philadelphia, 301 Pa. 291, 302, 152 A. 23 (1930); Bell Telephone Company of Pennsylvania v. Pennsylvania Public Utility Commission, 139 Pa. Superior Ct. 529, 534, 12 A. 2d 479 (1940). The Commonwealth, through any designated agency, may compel the public utility companies to remove or relocate their facilities at the company's expense. Philadelphia Suburban Water Co. v. Pennsylvania Public Utility Commission, 168 Pa. Superior Ct. 360, 366, 78 A. 2d 46 (1951); Keystone Telephone Co. v. Philadelphia & Reading Railway Co., 56 Pa. Superior Ct. 384, 386 (1914)."

In fact such utilities are merely permitted without cost to utilize rights-of-way of the Commonwealth for the sole convenience of the utility. Neither the Commonwealth nor the general public (other than the utility's own customers) derives any benefit whatever from such permissive use. The majority also recognizes that under the common law, in the absence of express statutory authority, such utility companies cannot even claim the costs of such relocation as consequential damages. See *Philadelphia Suburban Water Co. v. Pennsylvania Public Utility Commission,* 168 Pa. Superior Ct. 360, 371, 372, 78 A. 2d 46; *Westmoreland Chemical & Color Co. v. Public Service Commission,* 294 Pa. 451, 458, 144 A. 407 (1928); *Pennsylvania Company for Insurance on Lives and Granting Annuities v. Philadel-*

*phia,* 351 Pa. 214, 217, 40 A. 2d 461 (1945). Moreover, the common law rule places on the owner the obligation to remove or relocate such utility facilities.

Recognizing these principles the majority holds that there is nothing to prevent the Commonwealth from paying utility companies for relocating such facilities "providing it expresses the intent to do so through statute." The majority then finds such authority in sections 409 and 411 of the Public Utility Law, 66 PS §§1179, 1181. Assuming that a statute could authorize such payment by the Commonwealth, such authority does not appear to have been expressed in sections 409 and 411 of the Law. In section 409, 66 PS §1179, the Legislature clearly states the extent to which costs may be imposed upon the Commonwealth. Section 409 (a) begins as follows: "No public utility, engaged in the transportation of passengers or property, shall, without prior order of the commission, construct its facilities across the facilities of any other such public utility or across any highway . . ." Throughout the remainder of the section the Legislature refers only to railroads as they cross one another or as they cross a highway. There is no mention of, or reference to, any other kind of public utility. The major emphasis of this section is on the construction of railroad crossings and nothing else. The majority quotes a portion of section 409 (c) which states: "The commission may order the work of construction, relocation, alteration, protection, or abolition of any crossing aforesaid to be performed in whole or in part by any public utility or municipal corporation concerned or by the Commonwealth." The majority emphasizes the words "construction" and "relocation," but it is obvious from a reading of even this portion of section 409 that the work of construction and relocation referred to is the construction and relocation "of any crossing," i.e., the railroad-highway

crossing itself. The same is true with respect to that portion of section 411 (a), 66 PS §1181 (a), which the majority quotes as follows: " 'Such compensation (for damages which the owners of adjacent property taken, injured, or destroyed may sustain), as well as *the expense of such construction,* relocation, alteration, protection, or abolition of any crossing, shall be borne and paid, as hereinafter provided, by the public utilities or municipal corporations concerned, or by the Commonwealth, . . .' " The majority stresses the words "expense of such construction" and holds that they include the expenses of relocating the incidental utilities located on the highway right-of-way. However, the only expense of construction intended in this section is the expense of construction or relocation "of any crossing." The Legislature intended that these sections apply only to the expenses of the railroad reconstruction or relocation and the expenses of the highway construction or relocation. In *Department of Highways of Commonwealth v. Pennsylvania Public Utility Commission,* 141 Pa. Superior Ct. 376, 380, 14 A. 2d 611, this Court, speaking of section 411, said: "By §411 of the Public Utility Law (66 PS §1181), the resulting expenses of the construction, relocation, alteration, maintenance or abolition of crossings of railroads and highways are directed to be borne and paid 'by the public utilities or municipal corporations concerned, or by the Commonwealth, . . .' "

The majority believes that the relocation of utility facilities (other than the railroad facilities) is as much a part of the construction or relocation of a highway as is the removal of trees or the making of cuts and fills. But it fails to take cognizance of the fact that such relocation of utility facilities is not a part of the construction and relocation of the highway itself. Such utilities are occupiers by consent of the Commonwealth

without any charge, and they have always been required to bear the cost of their own construction and removal. The obvious reason for the latter rule is that such utilities use the highways for their own convenience, not the convenience of the public, and that they should rightfully bear their own expenses. This is the least that the general public can expect from them.

If the reasoning of the majority is correct, under Article IX, §18 of the Pennsylvania Constitution, the proceeds of the Motor License Fund must be used to pay the cost of such relocation along every highway as part of the construction or alteration cost of such highway. That section of the Constitution provides: "All proceeds from gasoline and other motor fuel excise taxes, motor vehicle registration fees and license taxes, operators' license fees and other excise taxes imposed on products used in motor transportation [after certain deductions] . . . shall be . . . used solely for construction, reconstruction, maintenance and repair of and safety on public highways and bridges and air navigation facilities and costs and expenses incident thereto, . . . and shall not be diverted . . . to any other purpose, . . ." As I view it, the Constitution itself prevents the diversion of the Motor License Fund to the payment of obligations which have heretofore rested upon the utilities themselves. See Opinion of the Justices, Supreme Judicial Court of Maine, 132 A. 2d 440. The ultimate result of the majority opinion would be to permit the use of the Motor License Fund for such payments to utilities. Section 401 of the Act of June 1, 1945, P. L. 1242, 36 PS §670-401, provides: "The department shall construct or improve, and thereafter maintain and repair, at the cost and expense of the Commonwealth, the highways forming the plan or system of the State highways, in the several counties and townships." Consequently, if we apply the interpreta-

tion given by the majority to the term "construction," the ultimate result is inevitable.

The costs of relocating such incidental utility facilities form no part whatever in the construction of a highway or its relocation whether such construction is at a railroad crossing or elsewhere. The only exception to the general rule that the costs of relocating utility facilities may not be placed upon the Commonwealth is where a railroad crossing is involved and then only the costs of the railroad crossing and highway may be apportioned or allocated to the Commonwealth. No other exception is made or implied by sections 409 and 411.

Sections 409 and 411 of the Law do not give the commission the power or authority to allocate the cost of relocating utility facilities (other than railroad costs) merely because such utility facilities are located in a highway which crosses a railroad. These sections relate, as indicated, only to the actual highway and railroad construction. The power and jurisdiction of the commission with respect to the various utility facilities crossing one another comes from section 412 of the Law, 66 PS §1182, not from sections 409 and 411. Section 412 provides: "The commission may, after reasonable notice and hearing, upon its own motion or upon complaint, prescribe as to service and facilities, including the crossing of facilities, just and reasonable standards, classifications, regulations, and practices to be furnished, imposed, observed, and followed by any or all public utilities; . . ."

*Philadelphia Suburban Water Co. v. Pennsylvania Public Utility Commission*, 168 Pa. Superior Ct. 360, 78 A. 2d 46, does not support the imposition of incidental utility relocation costs upon the Commonwealth. In that case the cost of relocation was not imposed upon the Commonwealth. The broad language therein

to the effect that such utility facilities are within the scope of section 409 is dicta, especially in view of the fact that section 412, which relates to the crossing of utilities inter se, is not mentioned or discussed. It is also my opinion that the cases of *Delaware River Port Authority v. Pennsylvania Public Utility Commission*, 180 Pa. Superior Ct. 315, 119 A. 2d 855, and *Delaware River Port Authority v. Pennsylvania Public Utility Commission*, 184 Pa. Superior Ct. 280, 133 A. 2d 853, cannot be extended to support the imposition of such relocation costs upon the Commonwealth in this case. The Delaware River Port Authority is a self-liquidating authority; this is materially different from the Department of Highways which pays its costs of construction and relocation out of the Motor License Fund. Unlike the Motor License Fund the funds of the Delaware River Port Authority do not have the protection of Article IX, §18 of the Pennsylvania Constitution. Moreover, it may be that we did not give sufficient consideration to the limited scope of sections 409 and 411, in view of the provisions of section 412. However that may be, it is clear that in the Delaware River Port Authority cases we did not hold that the cost of relocating facilities of incidental utilities was an expense of the construction of the highway. The holding of the majority that the relocation of such incidental utility facilities is a part of highway construction is unwarranted by any equitable consideration and is without basis in the Public Utility Law and the cases decided thereunder. Most important, however, is the fact that the imposition of these relocation costs upon the Commonwealth is without any doubt contrary to the intent, purpose, and prohibition of Article IX, §18 of the Pennsylvania Constitution.

The majority refers to *Pennsylvania Railroad Company v. Pennsylvania Public Utility Commission;* 136

Pa. Superior Ct. 1, 7 A. 2d 86. This case held only that the Public Utility Commission could allocate the expenses of maintenance and repair of a bridge crossing a railroad equally between the railroad and the Department of Highways.

The Federal-Aid Highway Act, which the majority states has focused attention upon the present problem, indicates the traditional rule that except for railroads relocated because of highway construction the sovereign is not required to pay for the relocation of utility facilities. Under the federal act the Federal Government will pay as high as 90 per cent of the cost of highway construction. If these funds are used for utility relocation it is a matter of simple mathematics that the funds available for more extensive highway construction will be greatly diminished. Under the federal act the cost of relocating such incidental utility facilities is payable out of federal funds only if such is authorized by the state law (except for railroad relocation costs which are required to be reimbursed).[1] House Bill No. 984 (The General Assembly of Pennsylvania, 1957), which was vetoed by the Governor, would have authorized the payment of incidental utility relocation costs from the Motor License Fund.[2] The significance of this vetoed measure is that, if under the present law

---

[1] In states where reimbursement for costs of relocating utility facilities as a part of highway improvements is broadly applied, it is recognized also that it is for the Legislature to declare that the relocation of such facilities is a part of the cost of highway relocation and reconstruction and shall be paid out of highway funds. Opinion of the Justices, Supreme Court of New Hampshire, 132 A. 2d 613.

[2] "The Pennsylvania Motor Federation estimates if the bill was signed into law it would tap the Motor License Fund for 200 million dollars in the next 10 years. It is all money that has been going for highway construction and improvement." The Morning Call, Allentown, Pa., July 17, 1957.

the relocation costs of incidental utility facilities were a part of highway construction, it would not have been necessary to have this special enactment. Secondly, the act would have applied only to construction under the federal program.[3] The majority's interpretation of the present Public Utility Law extends it at least to all highway construction crossing a railroad regardless of whether such construction is or is not under the federal program.

I briefly summarize my conclusions: It appears that, at common law and traditionally, utilities which are permitted to use highway rights-of-way for their convenience and benefit are not entitled to reimbursement for relocation or construction costs, at least not in the absence of clear statutory authority. The Legislature in sections 409 and 411 of the Public Utility Law has made one exception to the general rule. Under those sections, where a railroad crosses a highway, the cost of construction or relocation of such crossing may be allocated to the Commonwealth.[4] This is a traditional exception to the general rule, which even the Federal-Aid Highway Act recognizes. Other utility services, however, use the highways by mere permission, without cost, and they acquire no property rights whatever therein. There is nothing in sections 409 and

---

[3] It has been announced by the Federal Bureau of Public Roads that the Federal Government has presently earmarked $90,036,000 to Pennsylvania for construction of the early stages of the federal super highway system, and that highway construction contracts in Pennsylvania already awarded or awarded with work started total $104,987,000 of which the Commonwealth will pay about $14,900,000. The total will finance about 81.9 miles of roadway.

For certain approved types of primary and secondary highways the Federal Government will reimburse the Commonwealth to the extent of 50 per cent of the construction cost.

[4] See *Department of Highways v. Pennsylvania Public Utility Commission*, 179 Pa. Superior Ct. 376, 116 A. 2d 855.

411 which even remotely relates to the imposition of their relocation costs upon the Commonwealth. To say that because they happen to be located on a highway which crosses a railroad they are entitled to be reimbursed under sections 409 and 411 is to broaden unreasonably the scope, meaning, and intent of those sections. Such utilities form no part of the highway; their relocation is not a part of the highway construction under normal circumstances. Why, then, should they be considered part of the highway when the highway happens to cross a railroad? The fact remains that the very limited exception to the rule forbidding imposition of such costs upon the Commonwealth, as that exception has been expressed in sections 409 and 411, applies only to the construction or relocation costs of the highway and the railroad, and to no other costs.

Finally, the meaning given by the majority to the words *expense of the construction of a highway* cannot fail to create consternation. Expense of construction cannot be extended logically or reasonably, at least in the absence of direct and specific statutory mandate, to include gratuities to those utilities which have been given access to our highways at the will of the Commonwealth without any cost for the privilege. I regret to say that the majority opinion is pure judicial legislation, and, among other things, would accomplish the purpose of House Bill No. 984, which was vetoed by the Governor.