## Delaware River Port Authority, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued March 25, 1957. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

*Morris Duane and Henry T. Reath,* with them *John B. Felton,* and *Duane, Morris & Heckscher,* for Delaware River Port Authority, appellant.

*Miles Warner,* Assistant Counsel, with him *Thomas M. Kerrigan,* Acting Counsel, for Public Utility Commission, appellee.

*Ernest R. von Starck,* with him *Samuel Graff Miller,* Assistant General Counsel, and *Vincent P. McDevitt,* General Counsel, for Philadelphia Electric Company, intervening appellee.

OPINION BY HIRT, J., July 29, 1957:

Much of the general discussion in our opinion in *Delaware River Port Authority v. Pa. P. U. C.,* 180 Pa. Superior Ct. 315, 119 A. 2d 855, is relevant here as a statement of the background of the present appeals. In that prior proceeding the removal of two aerial transmission lines of Philadelphia Electric Company, from Delaware Avenue at the Packer Street crossing in Philadelphia, was made necessary to make way for the construction of a pier to support the approach to the structure, now known as the Walt Whitman Bridge. In that proceeding the Pennsylvania Public Utility Commission had assessed the cost of removing and relocating electric facilities, on the Authority. The Commission clearly had jurisdiction of the controversy, and in the above appeal we affirmed the order. The present six appeals are from a consolidated order of the Commission which similarly, and in applying like principles, ordered the Authority to pay the costs of removal and relocation of facilities of Philadelphia Electric Company including those at eleven additional streets crossed by the approach to the bridge, made necessary by the construction of the approach. In this, a sequel to the prior proceedings, the Commission in allocating the relocation costs, clearly had jurisdiction, and by the application of principles, which we found to be controlling in the *Delaware Avenue* appeal, supra, the present order must be affirmed.

The area acquired by the Authority, which is now occupied by the bridge approach is located a short distance north of, and parallel with, Packer Avenue over the former bed of the tracks of the Pennsylvania Railroad, the Baltimore and Ohio Railroad operating the Schuylkill River East Side Railroad. These tracks ran west from Delaware Avenue in a straight line across Philadelphia to Twenty-fifth Street. Accordingly there were in fact crossings of railroad tracks by the approach, throughout its entire length in the area with which we are concerned, including rail crossings at Swanson Street and Stonehouse Lane. There were also crossings of trolley tracks of the Philadelphia Transportation Company at Seventh and Tenth Streets which are involved in the present appeals.

In accordance with an agreement entered into with the Authority the railroads filed applications with the Commission, the subject matter of four of the present appeals, which together requested permission to abandon their tracks at the crossings at Swanson Street; at Moyamensing Avenue; at Broad Street and at crossings in other intersections from Seventh to Twentieth Streets, inclusive. At Seventh Street and at Tenth Street the Authority applied to the Commission for approval of the construction of crossings of the Philadelphia Transportation Company tracks. As to what party made the application in raising the issues, however, is unimportant. The removal of the railroad tracks and their relocation were approved by the Commission, and as required by the Act of July 9, 1919, P.L. 814, 36 PS §3425 the Authority reimbursed the railroads for their entire relocation costs. At the time of these applications the Electric Company had a 2400 volt transmission line partly in Packer Avenue and partly in the railroad rights-of way, extending from a point east of Swanson Street, westwardly to Seventh

Street; the Company also had distribution and street lighting lines in the crossings at Stonehouse Lane, Seventh and Tenth Streets, Broad Street, and at the other rail crossings from Fifteenth to Twentieth Streets. It was *upon the order of the Authority* that the Electric Company moved its facilities and this the company did or will do in accordance with that order at an estimated cost of $221,000.

In the proceedings in which the Authority applied to the Commission for approval of the construction of crossings, at Seventh and Tenth Streets, this appellant concedes that "the facts are almost identical with the facts in the Delaware Avenue Case" supra, and as to the authority's obligation to pay the Electric Company's costs of removal of facilities at these crossings, there can be no question, on the authority of that decision. Removal and relocation at a cost of $9,000 was made necessary because the electric lines interfered with the approach to the bridge. In other of the instant applications, the Authority contends that the Electric Company's costs cannot be allocated against it for the reason that the removal of the railroad tracks in itself did not interfere with the electric facilities. As demonstrating the fallacy of that contention we are in entire accord with this discussion by the Commission of the reasons upon which its order is based: "We think that the hearing examiner properly admitted into evidence over Authority's objection the uncontradicted testimony that the abolition of the crossings involved in Docket No. 81587,[1] as well as those involved in the other applications before us, is the direct consequence of the construction by the Authority of the Westerly approach

---

[1] Under A 81587 the railroads applied for leave to remove tracks from the crossings at Swanson Street and Packer Avenue, and for authorization of the construction of a new grade crossing by the laying of new tracks in Swanson Street.

to its Delaware River bridge. We are not impelled, by the fact that the abandonment of track has not of itself occasioned the relocation of electric facilities, to shut our eyes to the fact that the limited-access highway project is the common cause which underlies the necessity for relocating both the rail and the electric facilities. To adopt the narrow contention of the Authority, and to hold that our jurisdiction is circumscribed by the extent to which the rail relocations have themselves caused the relocations of other utilities incidentally affected, would be to distort the intent of the legislature in sections 409 and 411 of the Public Utility Law.[2] Under Section 409(c), this Commission is vested with power 'after hearing, upon notice to all parties in interest, including the owners of adjacent property, to order any such (highway-rail) crossing heretofore or hereafter constructed to be relocated or altered, or to be abolished upon such reasonable terms and conditions as shall be prescribed' by us. Under Section 411 we have the power to order 'the expense of (the) construction, relocation, alteration, protection, or abolition of any (highway-rail) crossing, (to) be borne and paid . . . by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as (we) may, after due notice and hearing, determine . . .' Our statutory powers clearly oblige us to consider the substance and not merely the form of the instant applications. We have, therefore, no hesitation in holding that the relocations which Philadelphia Electric Company is obliged to make are within the scope of the applications at Docket No. 81587, because clearly necessitated by the project giving rise to that application."

---

[2] The Public Utility Code of May 28, 1937, P. L. 1053, as amended, 66 PS §§1179, 1181.

The Authority's attempt to distinguish the issues in the present appeals from those disposed of with finality in *Delaware River Port Authority v. Pa. P. U. C.,* supra, are wholly unconvincing. We find ourselves in entire agreement with the appellee's contention that the two cases are the same in fact and identical in principle. In the earlier case the affected track crossing was at Delaware Avenue, a north-south cross street beneath the approach; in the present case the track crossings are at eleven other cross streets west of Delaware Avenue. Moreover, all of the crossing alterations, whether at Delaware Avenue, as in the earlier case, or at the locations now involved, are part and parcel of the same indivisible bridge project, as are also the affected facilities in Packer Avenue west of Swanson Street which extend beyond actual crossing areas. In fact, if there is any discernible difference between these cases and the *Delaware Avenue* case, it is one which confirms and strengthens the Commission's jurisdiction. By having consolidated these appeals, it is now possible to view the entire approach in its true light; that is, as a single structure which constitutes an integrated rail-highway crossing project for its entire length. By choosing to build its approach along the right-of-way of the railroads for a distance of more than two miles, making necessary the abolition or alteration of street-rail crossings, the Port Authority obviously subjected the approach to the jurisdiction of the Commission for the purposes of Sections 409 and 411 of the Public Utility Law. Moreover the fact is important that the abolition of the crossings, ordered by the Authority was for the benefit of the Authority alone and not the railroads nor of the electric utility. Cf. *Tarentum Borough v. Pa. P. U. C.,* 171 Pa. Superior Ct. 156, 160, 90 A. 2d 853.

The same considerations as in the prior proceeding prompted the Commission to assess the present costs on the Authority. The proceeds of the $100 million-bond-issue will be entirely adequate to meet the construction costs of the bridge together with all collateral charges such as here involved. The bridge for the future will be maintained, and the bonds will be serviced both as to interest and principal entirely by tolls to be collected from users of the bridge. No benefits, so far as disclosed by this record, will accrue to Philadelphia Electric Company nor to the rate payers from relocations of its transmission lines as ordered by the Authority. It would be most inequitable to put these costs, where they ultimately would rest, upon the rate payers of the Electric Company. The bond issue which provided the funds for the construction of the bridge will, without doubt, be self liquidating from the tolls collected from the users of the bridge. They will be the beneficiaries of the construction of this interstate link in a system of national highways and it is they alone who should pay. Clearly the Commission cannot be charged with abuse of discretion in allocating the Electric Company's relocation costs against the Authority in the present proceedings.

Order affirmed.