332 P.2d 1007

STATE HIGHWAY COMMISSION of New Mexico, and L. D. Wilson, Chief Highway Engineer, Plaintiffs-Appellants,

v.

SOUTHERN UNION GAS COMPANY, a Delaware Corporation, Defendant-Appellee.

No. 6425.

Supreme Court of New Mexico.

Nov. 14, 1958.

Rehearing Denied Dec. 30, 1958.

Leave to File Second Motion for Rehearing Denied Feb. 3, 1959.

See 334 P.2d 1118.

Fred M. Standley, Atty. Gen., Robert F. Pyatt, Asst. Atty. Gen., John T. Watson, Charles C. Spann, Robert E. Fox, Sp. Asst. Attys. Gen., Moise, Sutin & Jones, Albuquerque, for appellants.

Willis L. Lea, Jr., James R. Wetherbee, Dallas, Tex., Manuel A. Sanchez, Santa Fe, Noble & Noble, Las Vegas, for appellee.

Nordhaus & Moses, Albuquerque, and Hartley, Buzzard & Patton, Clovis, Frank L. Horan, Malcolm W. deVesty, Paul F. Henderson, Jr., Thomas N. Keltner, Albuquerque, amici curiae.

SHILLINGLAW, Justice.

86

This is a declaratory judgment action brought by the State Highway Commission of New Mexico and its Chief Highway Engineer against the Southern Union Gas Company to determine the constitutionality of Chapter 237 of the Laws of 1957, § 55-7-18, N.M.S.A.1953, and the obligation of the Highway Commission, if any, to reimburse the defendant for the cost of relocating its gas lines required because of the widening and improving of a state highway. As provided by the Federal-Aid Highway Act of 1956, 23 U.S.C.A. § 151 et seq., 62.88% of the cost of the project is to be reimbursable from federal aid funds.

The plaintiffs have refused to reimburse the defendant, contending that such reimbursement would be repugnant to the Constitution of the State of New Mexico for the reasons that payments would be in violation of:

1) Article IX, § 14 which prohibits a donation of state funds in aid of a private corporation;

2) Article IV, § 32 which prohibits the release of an existing obligation;

3) Article IV, §§ 16 and 30 since the Act does not specify the sum appropriated and leaves the extent of the appropriation and the payment thereof to be determined by the Bureau of Public Roads; and

4) Article IV, § 18 because the Act extends the provisions of the Federal-Aid Highway Act of 1956 by reference to its title only.

This cause was heard below before the Hon. David W. Carmody of the First Judicial District who found that the Act did not violate any of the constitutional provisions hereinabove mentioned. From such adverse judgment the plaintiff Highway Commission has appealed to this court. This cause together with the cases of State Highway Commission v. Southern Union Gas Co., No. 6427; State Highway Commission v. Mountain States Telephone & Telegraph Co., No. 6424; and State Highway Commission v. Ruidoso Telephone Co., No. 6426, were consolidated for argument before us on July 28, 1958. 65 N.M. 98, 99, 101, 332 P.2d 1017, 1018, 1019.

Let us examine the first constitutional question raised by the appellants:

"Reimbursement by states to public utilities for relocation of facilities as provided by Chapter 237, Laws of 1957, is unconstitutional in that it makes a donation in aid of private corporations in violation of Article IX, Section 14 of the Constitution of New Mexico."

Section 14 of Article IX of the New Mexico Constitution reads as follows:

"Neither the state, nor any county, school district, or municipality, except

as otherwise provided in this Constitution, shall directly or indirectly lend or pledge its credit, or make any donation to or in aid of any person, association or public or private corporation, or in aid of any private enterprise for the construction of any railroad; provided, nothing herein shall be construed to prohibit the state or any county or municipality from making provision for the care and maintenance of sick and indigent persons."

The question before us is whether or not Chapter 237, Laws of 1957, § 55–7–18, N.M. S.A.1953, is repugnant to the above section of our constitution. Chapter 237 reads in part as follows:

"B. Whenever the state highway commission shall determine it is necessary that any facilities be relocated because of the construction of a project on the federal aid primary or secondary systems or on the interstate system, including extensions thereof within urban areas, the state highway commission shall reimburse the owner of such utility facilities for the cost of such relocations, when the proportionate part of such cost is reimbursable from federal funds as provided by the Federal Aid Highway Act of 1956, without discrimination or impairment for lack of easement or because of the provisions of any local franchise entered into with any department, commission or political subdivision of this state, not to exceed an amount approved by the bureau of public roads.

\*   \*   \*   \*   \*   \*

"D. For the purposes of this section, the term 'cost of relocation' shall include the entire amount paid by such utility properly attributable to such relocation after deducting therefrom any increase in the value of the new facility and any salvage value derived from the old facility."

Chapter 237 was passed following the enactment by the Congress of the United States of the Federal-Aid Highway Act of 1956, section 111(a) through (c) of which reads as follows [23 U.S.C.A. § 162]:

"(a) Subject to the conditions contained in this section, whenever a State shall pay for the cost of relocation of utility facilities necessitated by the construction of a project on the Federal-aid primary or secondary systems or on the Interstate System, including extensions thereof within urban areas, Federal funds may be used to reimburse the State for such cost in the same proportion as Federal funds are expended on the project: *Provided,* That Federal funds shall not be apportioned to the States under this section when the payment to the utility violates the law of the State or violates a legal contract between the utility and the State.

"(b) For the purposes of this section, the term 'utility' shall include publicly, privately, and cooperatively owned utilities.

"(c) For the purposes of this section, the term 'cost of relocation' shall include the entire amount paid by such utility properly attributable to such relocation after deducting therefrom any increase in the value of the new facility and any salvage value derived from the old facility."

New Mexico and several of the states, following this action of the Congress, through their legislatures sought to reimburse the utilities for the cost of relocating their facilities. A summary of the states' actions is set out at U.S.Code, Cong. & Adm. News, 85th Cong., 2d Session 1958, No. 6, at pages 745 and 746.

In our consideration of the problem we are favored with the opinions of the appellate courts of four of our sister states construing their statutes which, for all practical purposes, are identical with ours. The mandate of our constitution makers is as direct as any, and more so than some.

In an Opinion of the Justices, 152 Me. 449, 132 A.2d 440, 443, the Supreme Judicial Court of Maine said:

"The State, however, may, in our view, pay for the cost of relocating such facilities, if it chooses to do so. The purpose of such expenditures is public in nature, and the extent and conditions under which the State may meet such costs are for the Legislature to determine."

After repeating the above quotation from the Maine court, the justices of the Supreme Court of New Hampshire in an Opinion of the Justices, reported N.H., 132 A.2d 613, 615, added:

"The common-law rule which places the costs of relocating utility facilities on the owner 'specifically admits of legislative change.' [Citations omitted.]"

The Minnesota Supreme Court said in the case of Minneapolis Gas Co. v. Zimmerman, Minn., 91 N.W.2d 642, 644:

"Although gratuities and benevolences of public monies in aid of private undertakings are prohibited, Minn. Const. art. 9, §§ 1 and 10, does not prohibit the legislature from, by prospective action * * * fixing the conditions of performance and making provisions for the future recognition of claims for damages founded on equity and justice, although such claims would otherwise be damnum absque injuria and unenforceable against the state."

And the Minnesota court added, at page 651 of 91 N.W.2d:

"* * * [W]here it becomes reasonably necessary to relocate such utili-

ty facilities in order to improve the highway for public travel (and especially so, as to a highway designed to facilitate interstate travel and commerce and to further the common defense) an expenditure of funds to effect such relocation is properly a governmental function exercised for a public purpose of primary benefit to the entire community."

It might be explained that Minnesota is committed to the view, as stated at page 649 of 91 N.W.2d:

"\* \* \* the use of rights-of-way by utilities for locating their facilities is one of the proper and *primary purposes* for which highways are designed \* \* \*." [Emphasis ours.]

Needless to say, such has never been the policy in New Mexico.

The Supreme Court of Tennessee is the last to speak on the question and it takes an entirely opposite view in the very recent decision of State of Tennessee ex rel. v. Southern Bell Tel. & Tel. Co., 319 S.W.2d 90. There, as in the case before us, the legislation was attacked on several constitutional grounds, but the court held the statute violated Art. II, § 31 of their constitution. Although the case has been scheduled for reargument, we quote at length from the original opinion filed by the Supreme Court of Tennessee:

"It will be noted that in Article II, Section 31, the Constitution expressly prohibits the State's credit to, and in aid, not only of persons, corporations but municipalities as well.

"Now, with this situation in mind this statute directing the expenditures of State funds to reimburse utilities for adjusting or removing their facilities from publicly owned right of way so that a State highway may be improved *is primarily for the benefit of subscribers of utilities or their stockholders, and is neither a State nor a public purpose.*

\*     \*     \*     \*     \*     \*

"Under Article II, Section 31, the expenditure must be for a State purpose, which function the state performs for its general public, agencies and instrumentalities of the State for the accomplishment of a State purpose under State control; and the State must have the '\* \* \* right of use \* \* \*' of the property upon which the fund is expended. [Citations omitted.]

"The use of State credit for reimbursing utilities for removing their facilities from publicly owned right of way fails to serve a State purpose and is not for a public purpose. [Citations omitted.]

\*     \*     \*     \*     \*     \*

"If the Legislature is without authority under the Constitution to enact a law, the situation is the same as though there were no attempted enactment. Since the Constitution forbids the State from giving, or lending its credit ' * * * to or in aid of any person, association, company, corporation or municipality,' it is immaterial whether there is an attempt to have public monies paid out under the guise of legislative sanction.

"We think that the basic test under this Section of our Constitution is whether the expenditure is for a State purpose. In the present case the primary purpose served by the expenditure is for the convenience and benefit of the utilities, the purpose cannot be public. [Citations omitted.]

\* \* \* \* \* \*

"In the case of Oswego & S. R. Co. v. State, 226 N.Y. 351, 124 N.E. 8, is not in point. The whole basis of Justice Cardozo's opinion is that the Legislature may enact Acts when equity demands. The facts in the Oswego case showed that equity did demand that the state step in and do equity. We have no question of equity in the present case. The user of the defendants was only permissive.

"Certain factual situations were set out in the bill which must be taken as admitted on demurrer, which among other things, appears that the telephone company owns and operates a vast communication system for profit in the State of Tennessee, and a part of its facilities, including poles, wires, underground conduits, and other equipment are installed in, upon and under publicly owned rights of way under *Section 65–2105 T.C.A.* The public rights of way have been acquired at an enormous cost to the citizens and taxpayers of the State, and the Telephone Company, as well as other privately and publicly owned utilities, have used and occupied such rights of way without cost, or expense to them.

"The bill charges that in order to participate in the interstate highway program, it was necessary for the State to appropriate and raise large sums of money, necessitating the enactment of Chapter 264, Public Acts of 1957, authorizing the State Funding Board to issue bonds in the amount not exceeding $30,000,000.00; that the department has estimated that the cost of relocating utility facilities in connection with interstate highway projects in Tennessee will amount to $15,370,000.00, which is more than one half of the amount which the Legislature authorized the State to borrow for highway purposes under said Chapter 264, Public Acts of 1957."

We now turn to the opinions of this court for guidance. Admittedly the precise question has never previously been before us. However this court has spoken in a manner that points the way for our disposition of this appeal.

In Hutcheson v. Atherton, 44 N.M. 144, 99 P.2d 462, 470, Mr. Justice Sadler quoted from the opinion óf Chief Justice Roberts in Harrington v. Atteberry, 21 N.M. 50, 153 P. 1041, as follows:

"It is argued by appellants that the county commissioners have a right to expend public funds *for the general welfare* of the county; that the prosperity of the state depends, to a large degree, upon the success of its horticultural and agricultural industries; that the encouragement of these pursuits, and the education of those engaged and desiring to engage in such vocations, is a public duty, for which public funds may be lawfully expended, if legislative authority therefor exists, without violating any constitutional provision. All this may be admitted to be true, and still it does not alter or affect the present question. *Here the Legislature has not authorized the boards of county commissioners to expend public funds for such purpose, but has directed the paying over of such funds to a corporation, not under the control of the county or state, to be used by such corporation in discharging an obligation assumed by it, thereby relieving it of the expenditure of its own funds, to the extent of the aid advanced by the county.* It is true the holding of a county fair, at which the agricultural, horticultural, and other resources and products of the county are exhibited and premiums awarded for the superior product, is educational in its nature and *serves a public purpose;* but, *if this were the criterion by which the validity of an appropriation of public funds is to be measured, there would be hardly any limit upon the right of the state,* county, city, or school districts *to appropriate money to a private corporation.* Within the state we have many private corporations engaged in educational work and a still greater number serve some other useful purpose. Private individuals are likewise engaged in pursuits of a similar nature. If all these individuals and corporations could be given public money to aid them in carrying on the work in which they are engaged, there would practically be no limit upon the various agencies of government in the expenditure or donation of public funds, and the constitutional provision in question would be a vain, useless, absurd, and meaningless aggregation of words and sentences.

"The language of the constitutional provision is so clear and explicit that

it does not require construction; all that need be done is to read it and apply the language in its ordinary sense. It prohibits the state, county, and other agencies of the state named, from making any donation to or in aid of any person, association, or public or private corporation, *except as otherwise provided in the Constitution.* Therefore an act of the Legislature appropriating money, or directing a county to appropriate money to a private corporation engaged in conducting a county fair, for the purpose of paying premiums on agricultural and horticultural and other exhibits, which is a duty assumed by such corporation, is in conflict with section 14 of article 9 of the state Constitution, prohibiting donations to persons, associations, and public and private corporations." [Emphasis ours.]

And then Mr. Justice Sadler applied the above remarks to the case before him:

"We are not unmindful of the fact that in promoting a state wide celebration commemorating the four hundredth anniversary of the heroic exploration of New Mexico by Francisco Vasquez de Coronado, the 'New Mexico Fourth Centennial Coronado Corporation', hereinafter and heretofore called Coronado Corporation, *is engaged in serving a highly commendable public purpose. But that fact alone does not warrant the State or any county or city in making a donation or pledging its credit in aid of it.* As so aptly observed in the opinion just quoted from, there being many private corporations engaged in laudable public enterprises, if this were the criterion, 'there would practically be no limit upon the various agencies of government in the expenditure or donation of public funds.'

"Very little is disclosed by the pleadings as to the exact nature of the Coronado Corporation. It has been assumed by the parties that it is a corporation and for purposes of our decision we may even concede it to be a non-profit corporation without shareholders in the ordinary sense, composed of a group of public spirited, patriotic citizens who have banded themselves together for the purpose of appropriately celebrating a great event in New Mexico history. This fact, however, does not make it a proper subject of governmental bounty. *It is not a subordinate governmental agency.* And the mere fact that the work in which it is engaged is of great educational and patriotic value, which all will admit, does not legally entitle it to state or county aid." [Emphasis ours.]

May we paraphrase from portions of the foregoing quotations:

"Here the legislature has not authorized the State Highway Commission to expend public funds for such relocation purpose but has directed the paying over of such funds to the Southern Union Gas Company, not under the control of the Highway Commission or the state, to be used by the Southern Union Gas Company in discharging an obligation assumed by it, thereby relieving it of the expenditure of its own funds to the extent of the aid advanced by the state."

We are not unmindful of the fact that in operating its gas distribution system the Southern Union Gas Company is engaged in serving a highly commendable public purpose. But that fact alone does not warrant the state in making a donation in aid of it. In the Hutcheson case, supra, this court assumed the corporation involved to be a nonprofit corporation without shareholders (while in the case before us the Southern Union Gas Company is unquestionably a private corporation) but in that case the court said:

"[The fact that it is a nonprofit corporation] does not make it a proper subject of governmental bounty. It is not a subordinate governmental agency."

It has been suggested that the expenditure of public monies to reimburse the Southern Union Gas Company for the relocation of its facilities is an expenditure for a public governmental function. Assuming this to be true for the sake of argument, the foregoing quotation from the Hutcheson case suggests the answer to such contention. That the utility is not performing a public governmental function was unequivocally decided by the Supreme Court of Tennessee in State of Tennessee ex rel. Leech v. Southern Bell Tel. and Tel. Co., supra.

Department of Highways v. Pennsylvania Public Utility Commission, 185 Pa. Super. 1, 136 A.2d 473, an opinion of the Superior Court of Pennsylvania, was a case upon which appellee relied most heavily in its brief. Since argument of the instant case before this court, the Supreme Court of Pennsylvania has reversed the Superior Court in an opinion filed September 29, 1958, 145 A.2d 538. The question in the Superior Court was primarily one of statutory construction but it also involved a constitutional question. The Supreme Court reversed the Superior Court [184 Pa. Super. 280, 133 A.2d 853] on the question of the statutory construction but it did say, in Delaware River Port Authority v. Pennsylvania Public Utility Commission, Pa., 145 A.2d 172, 175, the controlling case decided the same day:

"[The] common law rule, however, can and may be abrogated by a *specific statutory mandate* directing the payment of relocation costs to the nontransportation utilities involved. See:

Philadelphia Electric Co. v. Commonwealth, 311 Pa. 542, 166 A. 892; Philadelphia Suburban Water Co. v. Pennsylvania Public Utility Commission, 168 Pa.Super. 360, 367, 78 A.2d 46."

A review of the cited cases reveals that no reference is made therein to the constitutional question involved in the case before us. Likewise the facility being considered was a self-liquidating project as hereinafter further noted. We are also impressed with the fact that the Pennsylvania constitution is not nearly as comprehensive as ours:

"The credit of the Commonwealth shall not be pledged or loaned to any individual, company, corporation or association, nor shall the Commonwealth become a joint owner or stockholder in any company, association or corporation." Art. IX, § 6, Pa.Const., P. S.

Article IX, Section 7 of the Pennsylvania constitution reads:

"The General Assembly shall not authorize any county, city, borough, township or incorporated district to become a stockholder in any company, association or corporation, or to obtain or appropriate money for, or to loan its credit to, any corporation, association, institution or individual."

This inhibition against appropriations by counties is very similar in wording to our constitutional provision inhibiting the legislature itself from making a donation. Section 7 of Article IX of the Pennsylvania constitution was before their Supreme Court in the case of Wilkesbarre City Hospital v. County of Luzerne, 84 Pa. 55, and that case was quoted with approval by Mr. Chief Justice Roberts in Harrington v. Atteberry, supra [21 N.M. 50, 153 P. 1043]:

"A law enabling a private incorporated hospital to make requisitions upon a county, for the payment of its charges for the support of patients under treatment, even though they be paupers, is an appropriation of money by the county to the corporation and comes within the prohibition of the Constitution. It is not a payment of any debt incurred by the county, but is a transfer of the money by operation of the act of assembly from the treasury of the county to that of the hospital. The hospital exercise no municipal function, but takes as a private institution by a mere act of appropriation."

And Chief Justice Roberts added:

"The nursing of the sick poor is as much a public purpose as an exhibition of the products of a county, but we do not see how the purpose can so completely override the constitutional prohibition."

Appellee contends that the legislature here has determined these relocation costs to be a part of highway construction and that we are precluded from determining the reasonableness of that conclusion. We think the question before us is, "Whose cost?" Minnesota and New Hampshire would agree with appellee. Maine and, of course, Tennessee hold otherwise. In determining whether or not the expenditure of highway funds would violate Art. IX, § 19 of their constitution, the Supreme Judicial Court of Maine said in the Opinion of the Justices, 152 Me. 449, 132 A.2d 440, 443:

"The State, however, may, in our view, pay for the cost of relocating such facilities, if it chooses to do so. The purpose of such expenditures is public in nature, and the extent and conditions under which the State may meet such costs are for the Legislature to determine.

" * * * In our opinion the relocation of a utility facility is not to be construed as construction or reconstruction of a highway within the meaning of Art. IX, Sec. 19 of the Constitution.

"We do not commonly consider that a power company in erecting a pole line or a water district in laying a pipe in a highway is constructing a highway. To an even lesser degree would we consider the construction of a pole line or a water pipe across country to be the construction or reconstruction of a highway, although the reason for the relocation was occasioned solely by changes in the highway."

The Supreme Court of Georgia held likewise in Mulkey v. Quillian, 213 Ga. 507, 100 S.E.2d 268, 271, a taxpayer's suit alleging illegality of an act under which the highway department loaned money to a city for the purpose of removing and relocating utility facilities from rights of way of state aid roads. Granting an injunction, the court stated:

" * * * [T]he removal and relocation of utility facilities is not a necessary or usual adjunct to the construction of highways. State-aid highways can be and are constructed and maintained without any utility facilities being located on their rights-of-way. Utility facilities are placed thereon purely for the convenience of the political subdivisions or authorities controlling the utility and serve no useful or desirable purpose in the construction and maintenance of the highway itself, and serve no convenience of the highway or the Highway Department."

The appellee has argued that if these relocation costs were made payable "at the gasoline pumps" the burden would be imposed on those for whose benefit the highway construction was undertaken. We

96

hardly feel that this is a valid argument for the constitutionality of the act but, on the other hand, it does point out the distinction between the case at bar and the facts in Baltimore Gas & Electric Co. v. State Roads Comm., 214 Md. 266, 134 A. 2d 312, and the facts in the two Walt Whitman Bridge cases, Delaware River Port Authority v. Pennsylvania Public Utility Commission, 180 Pa.Super. 315, 119 A.2d 855, and Delaware River Port Authority v. Pennsylvania Public Utility Commission, 184 Pa.Super. 280, 133 A.2d 853, reversed Pa., 145 A.2d 172. The Maryland case involved a tunnel and the Pennsylvania cases a toll-bridge; both facilities were self-liquidating and in neither instance was there a direct obligation on the state. Those projects were literally being paid "at the gasoline pumps" by the users of the facilities. It is interesting to note that the Supreme Court of Maine in the Opinion of the Justices, 152 Me. 449, 132 A.2d 440, specifically held that relocation costs could be paid but that they could *not* be paid "at the gasoline pumps." In the instant case, if the payment of the relocation costs is a valid legislative act under our constitution, then the legislature could provide for the payment of such costs at the gasoline pumps, or it could, in its legislative discretion, provide for payment of such costs from a sales tax on bread and milk.

In conclusion, we would answer the main argument of the appellee that relocation of these utilities is a public governmental function by stating that the construction of highways is unquestionably a public governmental function but that we disagree as to relocation of utility facilities. Highways are constructed by the state on state-owned rights-of-way for the use of the public. The Southern Union Gas Company, in laying its gas lines, is acting solely for the benefit of the utility. The line is the property of the utility and to be used solely by it, neither the state nor the public having any right to use these lines. The Southern Union Gas Company is not a subordinate governmental agency nor is it fulfilling a governmental function although it is serving a highly useful purpose in the great American free enterprise tradition by furnishing for profit an essential commodity to the people of this state.

In reply to the appellee's contention that the legislature can change the common law to provide for future payment of utility relocation costs, it is beyond question that the common law is subject to change by statute. That such change may not offend the constitution is equally true. Public policy of this state is determined by the legislature but such declarations of policy are restricted by the limitations of our constitution. Flaska v. State, 51 N.M. 13, 177 P.2d 174.

An argument is advanced that it is "for the legislature to determine what are

and what are not compensable damages." In the relocation of these facilities, we see no damage to or taking of the property of the utility as contemplated by Art. II, § 20 of the constitution. Relocation costs are an *expense* to the utility, but it would permit the circumvention of the constitution by a play on words to say that this expense could be classified as *damages* and that the state could then pay such "damages." And we see no benefit accruing to the state, no *quid pro quo* as was found to exist in White v. Board of Education of Silver City, 42 N.M. 94, 75 P.2d 712.

Attention is directed to the excellent analysis of the prohibitions of Art. IX, § 14 contained in the opinion of Mr. Justice McGhee in State ex rel. Mechem v. Hannah, 63 N.M. 110, 314 P.2d 714. See also, State ex rel. Sena v. Trujillo, 46 N.M. 361, 129 P.2d 329, 142 A.L.R. 932. The case of Village of Deming v. Hosdreg Co., 62 N.M. 18, 303 P.2d 920, is readily distinguishable from the instant case.

Much has been said concerning the power of the legislature to reimburse the utility on the basis of equity and justice. That the legislature has the power to be equitable and just we may admit, but that power is restricted by the constitution. Otherwise the prohibition against a donation would have no meaning or effect. As stated in State ex rel. Sena v. Trujillo, *supra* [46 N.M. 361, 129 P.2d 333], the

"constitution makes no distinction as between 'donations', whether they be for a good cause or a questionable one. It prohibits them all * * *."

It is true that in Harrington v. Atteberry, supra, Chief Justice Roberts was striking down a $500 appropriation, but the legal principles then announced control us now in restraining our legislature in its attempt to expend a sum now approximating $10 million, and amounting to untold millions of dollars in the future. We hold that sections 1(B) and (D) of Chapter 237, Laws of 1957, § 55-7-18(B) and (D), N.M.S.A.1953, are repugnant to section 14 of Article IX of the Constitution of New Mexico and are thus invalid insofar as they provide for payment of relocation costs to the appellee. Inasmuch as sections 1 (B) and (D) are severable from the remainder of Chapter 237, only these sections are unenforceable.

Amicus curiae for the City of Albuquerque raises the question of repayment of relocation costs to a municipality which moves its municipally-owned utility facilities from a *municipally-owned right-of-way*. Since this question is not in issue under the fact situations presented, we deem it unnecessary to pass upon it.

The judgment of the lower court is reversed and the cause is remanded with instructions to enter a judgment declaring that the appellant State Highway Commission is under no obligation to reimburse

the Southern Union Gas Company for relocation of utility facilities as contemplated by Chapter 237 of the Laws of 1957.

It is so ordered.

McGHEE and COMPTON, JJ., and J. V. GALLEGOS, D. J., concur.

LUJAN, C. J., not participating.

SADLER, J., not participating because of illness.