167 A.2d 27 (1961)
STATE HIGHWAY DEPARTMENT, an agency of the State of Delaware, Plaintiff,
v.
DELAWARE POWER & LIGHT COMPANY, a Delaware corporation, and the Diamond State Telephone Company, a Delaware corporation, Defendants.
Supreme Court of Delaware.
January 12, 1961.
Richard H. Allen and S. Samuel Arsht, of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff.
David F. Anderson, of Berl, Potter & Anderson, Wilmington, for defendants.
BRAMHALL, Justice and CAREY and STIFTEL, Judges, sitting.
*28 BRAMHALL, Justice.
Plaintiff is an agency of this State with the powers and duties of constructing and maintaining state highways within the State. Defendants are public utility companies serving the public with electricity, gas and telephone services under franchises granted by plaintiff or by the City of Wilmington as to facilities within its corporate limits. These franchises provide that whenever it shall become necessary to remove and relocate any of such facilities which shall interfere unreasonably with any changes on said highways, the holders of such franchises shall relocate the same according to plaintiff's designation at their own cost and expense.
Plaintiff is presently engaged in the construction of three interstate highway systems in New Castle County, two of which will run through the corporate limits of the City of Wilmington. In the construction of these highways, defendants and the owners of other facilities will be required to remove and relocate a large amount of these facilities at an estimated expense of approximately five million dollars.
In Section 111 of the Federal Aid Highway Act of 1956 (23 U.S.C. § 123), it is provided that Federal funds may be used to reimburse any state which has paid the non-betterment costs of relocation of utility facilities necessitated by the construction of projects on the Interstate System, to the extent of 90% of such costs, subject to certain conditions therein stated not here important.
In Section 132(b) (5) of Title 17, Delaware Code (Vol. 51, Laws of Delaware, Chapter 141, p. 218), approved June 13, 1957, plaintiff was directed to reimburse the owners of public utility facilities for the non-betterment cost of removal and relocation necessitated by the construction of interstate highway projects in cases where the State is to be reimbursed by at least 90% of the cost thereof from Federal funds. Pursuant to the enactment of this statute, plaintiff entered into agreements with defendants providing for the reimbursement of defendants for the non-betterment expense of relocation of such facilities. As a result, defendants have been paid substantial sums on account of such costs and have performed additional work for which they have not yet been paid and for which plaintiff has not yet been reimbursed by the Federal government. Plaintiff has been advised by the Bureau of Public Roads, Administrator for the Federal Statute, that Federal aid for the reimbursement of such utility costs will be deferred until the determination of the validity of Section 132(b) (5) of Title 17, Delaware Code, has been established.
Plaintiff instituted a declaratory judgment action in the Court of Chancery of New Castle County for the purpose of determining the validity of this Statute. Each defendant filed an answer and a motion for judgment under the pleadings under Rule 12(c) of the Court of Chancery, Del.C.Ann. Thereupon, the Chancellor certified to this *29 Court for determination the question raised by the pleadings and motions. Being of the opinion that this question was of sufficient importance to necessitate a prompt determination, this Court accepted the certification.
The single question certified to this Court is as follows:
"Is Section 132(b) (5) of Title 17, Delaware Code (Vol. 51, Laws of Delaware, Chapter 141, page 218), approved June 13, 1957, a valid and constitutional law of the State of Delaware?"
The basis of plaintiff's attack on this section is that it is unconstitutional and invalid because it provides for the appropriation of public funds to a private corporation not for a public purpose. Unlike the decisions in a number of other states in which this question is considered, plaintiff here does not bottom its objection upon any specific section of our Constitution. Plaintiff relies upon judicial authority of this State and elsewhere to the effect that an appropriation of public funds not for a public purpose is invalid.
Plaintiff contends that the payments under the statute must be primarily for a public purpose. Conceding the right of the General Assembly to determine the State's policy and the purposes for which public funds shall be used, plaintiff, citing Wilmington Parking Authority v. Ranken, 34 Del.Ch. 439, 105 A.2d 614, states that it is the duty of the Court to determine whether such purposes are public in nature. Plaintiff also states that in order for a public purpose to exist, there must be a public need; that it is the duty of the Court to determine, independently of any presumption of constitutionality, whether a public purpose and need exist; that since defendants under their franchises are obligated to remove and relocate their facilities, the State, in yielding its right under its police power to compel defendants to relocate these facilities at their own expense, is making a gift to the utilities.
Defendants rest their case entirely upon Section 132(b) (5) of Title 17. They concede that under the common law they could be compelled to remove and relocate these facilities at their own expense. They contend that the statute is a constitutional exercise of the police power and authorizes expenditures for a public purpose.
As we view the contentions of the parties, the certification in this case poses two questions: (1) Whether the statute is a constitutional exercise of police power and (2) whether the expenditures authorized by the statute are for a public purpose.
Preliminarily, we think that the general background and purposes leading to the enactment of the Federal Statute and the statutes in this and other states should be given consideration.
The program envisaged by the Federal government is a complete system of Federal Interstate Highways, of which the projects in question will constitute a part. Ninety per cent (90%) of the cost of this program will be paid for by the Federal government under the Federal Aid Highway Act. Obviously, it is a gigantic program, with some crash features attached. Necessarily involved, along with acquiring the land for this construction, the removal and filling of the roadbed and the construction of the road itself, is the removal and relocation of a large amount of utility facilities  out of all proportion to the removal and relocation of facilities involved in the usual program of widening or straightening of roads. As appears in the various House and Senate reports[1], concern was expressed as to the impact which the cost of payment for such relocation would have upon the smaller utilities and communities owning *30 utilities which would very likely be unable to pay for the cost of such relocation. It was apparently for this reason and for the purpose of avoiding unnecessary delay in the completion of the program that there was inserted in the Federal Aid Act of 1956 a provision providing for the reimbursement of the states for 90% of their cost in the removal and relocation of such facilities. It would also seem to be apparent that in the inclusion of this provision in the statute Congress contemplated the passage by the various states of acts complementing the Federal Statute.
We have no difficulty in concluding that the statute constitutes a valid exercise of the police power by the General Assembly, assuming, of course, that the appropriation made therein is for a public purpose. In the case of State v. Hobson, 7 Terry 381, 83 A.2d 846, 855, this Court quoted with approval the opinion of the Superior Court in the case of Gallegher v. Davis and Law, 7 W.W.Harr. 380, 183 A. 620, 625, in which the general law in this state relating to police powers was set forth as follows:
"The police power of the state, speaking broadly, comprehends the whole system of internal regulation. Under it the state seeks, not only to preserve public order, but also to establish between members of society standards of good manners and neighborliness which tend to prevent a conflict of rights. The power extends to such restraints and regulations as are reasonable and proper to protect the lives, health, comfort, and property of citizens, and to promote the order, morals, safety and welfare of society. Van Winkle v. State, 4 Boyce [578], 27 Del. 578, 91 A. 385, Ann.Cas.1916D, 104. Exact definition is impossible; there are limitations to the power and the significance to be given to the broad, general language of attempted definitions, is to be gathered from the facts of the particular case. Mayor, etc., of Wilmington v. Turk, 14 Del.Ch. 392, 129 A. 512. The power is always subject to express or implied constitutional prohibitions; but where not so restrained, the exercise of the power depends upon whether the situation presents a reasonable necessity for the protection of the public welfare, and whether the means adopted bear a reasonable relation to the end sought to be accomplished. Within these limits, the court will not assume to disturb the legislative action. State v. Grier, 4 Boyce 322, 88 A. 579. With the policy or wisdom of the act we have no concern. State v. Allmond, 2 Houst. 612."
The construction, reconstruction, maintenance and repair of public highways is an inherently governmental function which belongs primarily to the State and may be exercised by it as a part of its police powers in connection with the general welfare. Brunswick & Topsham Water Dist. v. W. H. Hinman Co., 153 Me. 173, 136 A.2d 722; Southern Bell Tel. & Tel. Co. v. Commonwealth, Ky., 266 S.W.2d 308; County Council For Montgomery Co. v. Lee, 219 Md. 209, 148 A.2d 568; Handlan-Buck Co. v. State Highway Commission, Mo., 315 S.W.2d 219; Almond v. Gilmer, 188 Va. 822, 51 S.E.2d 272. Certainly highways have a very important relationship to the public welfare. We find nothing in the statute which provides for any unreasonable exercise of such power.
The important question for our determination is: Did the statute authorize the payment of money for a public purpose? Regardless of the other questions raised in this case, our determination of this question will be dispositive.
The expenditures which will be made under this Act  provided it shall be declared constitutional and valid  will in many instances be made to private corporations. Usually such appropriations are considered invalid unless made primarily for a public purpose. A number of the Supreme Courts *31 of the different states have decided this question, with different results and different reasons for their determinations. State ex rel. Rich v. Idaho Power Co., 81 Idaho 487, 346 P.2d 596; Opinion of the Justices, 152 Me. 449, 132 A.2d 440; Baltimore Gas & Electric Co. v. State Roads Comm., 214 Md. 266, 134 A.2d 312; Minneapolis Gas Co. v. Zimmerman, 253 Minn. 164, 91 N.W.2d 642; Opinion of the Justices, 101 N.H. 527, 132 A.2d 613; Wilson v. City of Long Branch, 27 N.J. 360, 142 A.2d 837; State Highway Commission v. Southern Union Gas Co., 65 N.M. 84, 332 P.2d 1007; Lehigh Valley R. Co. v. Canal Board, 204 N.Y. 471, 97 N.E. 964; New York City Tunnel Authority v. Consolidated Edison Co., 295 N.Y. 467, 68 N.E.2d 445; Oswego & Syracuse R. Co. v. State, 226 N.Y. 351, 124 N.E. 8; Transit Commission v. Long Island R. Co., 253 N.Y. 345, 171 N.E. 565; Westchester Electric R. Co. v. Westchester County Park Comm., 255 N.Y. 297, 174 N.E. 660; Northwestern Bell Telephone Co. v. Wentz, N.D., 103 N.W.2d 245; Delaware River Port Authority v. Pennsylvania Public Utility Comm., 393 Pa. 639, 145 A.2d 172; State v. Southern Bell Tel. & Tel. Co., Tenn., 319 S.W.2d 90; State v. City of Austin (State v. City of Dallas et al.), Tex., 331 S.W.2d 737; State Road Com'n of Utah v. Utah Power & Light Co., Utah, 353 P.2d 171. Jones v. Burns (Montana State Highway Commission), Mont., 357 P.2d 22.
In order to reach a proper conclusion on this question we must consider the purpose for which the statute was enacted, the general good which will likely result therefrom, and the difficulties which Congress anticipated would have to be overcome before the construction of this gigantic project shall be completed. To depend upon many of the smaller communities and utilities to provide for the expense of this removal would in many instances not only bankrupt such communities but, foreseeably, would cause considerable delay in the completion of the project. The users of these facilities constitute practically the whole of the different communities which the highways will serve. Conceivably to provide for the State to bear this cost would cause a much more equitable distribution of the cost of the relocation of the facilities than would be the case if the owners thereof should themselves be compelled to pay for this relocation, since, otherwise, many people would benefit from the use of the highways who would not be users of the particular facilities involved and would therefore pay nothing toward the cost of the relocation of the facilities.
A further practical result would be that if a state failed to comply with the requirements of the Federal Aid Act and should thereby not be reimbursed to the extent of 90% of the expenditures made for the relocation of facilities, that state would be paying a general tax covering the nonbetterment cost of the relocation of such facilities as to those states complying with the Federal Statute, even though the state itself should receive no benefit therefrom. See Minneapolis Gas Co. v. Zimmerman, supra.
There is a strong presumption of constitutionality attending a legislative enactment, which, unless the evidence of unconstitutionality is clear and convincing, a court will be reluctant to ignore. State v. Tabasso Homes, 3 Terry 110, 28 A.2d 248; Hertz Drivurself Stations, Inc. v. Siggins, 359 Pa. 25, 58 A.2d 464, 7 A.L.R.2d 438. We are also mindful of the principle of law that a Legislature is vested with a large discretion in determining what measures are necessary for the protection of the public interest and that any doubt as to such necessity must be resolved in favor of the legislative finding. Aprile v. State, 1 Storey 364, 146 A.2d 180; Booth v. Woodbury, 32 Conn. 118, 128. See Cooley's Constitutional Limitations, Eighth Ed., Vol. II, p. 1225. Of course, this finding is not conclusive, since the determining of what is a public purpose is ultimately a judicial question. Wilmington Parking Authority v. Ranken, supra.
*32 What constitutes a public purpose justifying the expenditure of public funds is not easily capable of precise definition. This Court in the consideration of this question in the case of Aetna Casualty & Surety Co. v. Smith, Del., 131 A.2d 168, 176, said:
"There is no universal test for the determination of whether or not the purpose of an Act is a proper object of public expenditure. Largely each case must be decided with reference to the object sought to be accomplished and to the manner and degree in which the public welfare is affected. In many instances a project may be for the benefit of private individuals or corporations as well as conferring a benefit upon the public. Under such circumstances courts will endeavor to ascertain whether the primary object of the Act is the benefit of the public or the benefit of the individual."
As previously stated, the decisions of the various courts on this question are far from unanimous. We do not deem it profitable to discuss in detail these decisions or the questions which the different courts found to be controlling except to say that as far as the question of public purpose is concerned by far the majority of these decisions held that an appropriation of public funds for the purpose of paying for the removal and relocation of utility facilities constituted a public purpose. In cases where a statute exists similar to the one in this state, only the decisions in the states of Tennessee, New Mexico and Idaho have held to the contrary.
Today the different utility facilities are used on practically all highways. In many congested areas the question could well be asked: Where else could they go? These facilities are for the benefit of all the people in the communities which they serve. They provide communication, transportation of heat, light and fuel. For all practical purposes they are in a sense almost as important to the well-being of those who reside in the communities served by them as the transportation of individuals. Certainly, they now constitute one of the important purposes for which highways are constructed and should be recognized and treated as such. In our opinion the appropriation under Section 132(b) (5) of Title 17, Delaware Code, was for a public purpose.
The answer to the question presented to this Court in the certification from the Chancellor is "Yes".
NOTES
[1] 70 Stat. 374, 23 U.S.C.A. § 162 [now § 123].

See Federal-Aid Highway Bill (102 Cong.Rec. 9930, June 26, 1956, U.S.Code Congressional and Administrative News 1956, pp. 2835, 2899).