791 A.2d 1155

**PECO ENERGY COMPANY, Appellee,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION,**
Appellant (at No. 22),

**Commonwealth of Pennsylvania, Department of Transportation, Intervenor Consolidated Rail Corporation, Intervenor, Bell Atlantic—PA, Inc., Intervenor.**

**Appeal of Commonwealth of Pennsylvania, Department of Transportation, Intervenor at No. 23.**

Supreme Court of Pennsylvania.

Argued Nov. 13, 2001.

Decided March 20, 2002.

40 

David E. Screven, John Herzog, Mechanicsburg, Robert J. Longwell, Bohdan R. Pankiw, Harrisburg, for PA PUC.

Todd P. Prugar, Pittsburgh, Thomas P. Brogan, David J. Dulick, Delia W. Stroud, Philadelphia, for PECO Energy Co.

Gina M. D'Alfonso, Jason D. Sharp, Andrew S. Gordon, William Jones Cressler, James M. Sheehan, Harrisburg, for Intervenor.

Benjamin Charles Dunlap, Harrisburg, for Consolidated Rail Corp.

Janet L. Miller, Harrisburg, for Verizon PA & Bell Atlantic PA.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NEWMAN, Justice.

Beneath the streets of Philadelphia lie miles and miles of gas pipelines, water and sewage conduits, electrical wiring, and telephone and television cables. When the city undertakes a street reconstruction project, these subsurface facilities, which are vital components of a system that delivers crucial utility services, often stand in the path of the city's proposed work, and they must be protected, relocated, or removed. Without this utility work, street reconstructions would be unable to proceed. Conversely, but for the city street construction, the incidental utility work would not be necessary. Responsibility for the payment of the expense of

protecting, relocating or removing these facilities is a matter of frequent dispute.

Because of the aforementioned situation, the Pennsylvania Public Utility Commission (Commission) appeals from an Order of the Commonwealth Court that vacated and remanded an Order of the Commission entered on April 5, 1999. The Commission Order granted the exceptions of the Pennsylvania Department of Transportation (Department) to a Recommended Decision of an Administrative Law Judge (ALJ) that imposed upon the Department the cost of relocating utility facilities located within a public right-of-way owned by the PECO Energy Company (PECO) and Bell Atlantic (Bell).[1] The Commission Order required PECO and Bell to bear 100% of their own respective relocation costs, which were impacted by a rail-highway crossing improvement project along Delaware Avenue in the City of Philadelphia. The effect of the Commonwealth Court decision was to reinstate the imposition of the cost of relocation of the PECO and Bell facilities upon the Department, except for any betterment to the utility facilities. We granted allocatur to determine whether the Commission may consider, among other factors, the rationale underlying the common law rule in rendering a decision regarding cost allocation and whether the decision of the Commission, with or without this consideration, was sufficient to sustain the objections of the Department.

## FACTS AND PROCEDURAL HISTORY

On September 3, 1997, the Department filed an application with the Commission to reconstruct Delaware Avenue, in the City of Philadelphia, to remove old railroad tracks and effect base repairs, drainage improvements and resurfacing. The purpose of this reconstruction was to afford a more controlled, orderly and safe traffic operational pattern in this area. The railroad tracks located within the project limits are owned by the Consolidated Rail Corporation (Conrail), and have been predominantly resurfaced. In 1986, in a proceeding before

1. Bell Atlantic is now Verizon, but for the purposes of clarity, it will be referred to as Bell throughout this opinion.

the Interstate Commerce Commission, Conrail was granted authority to abandon the twenty-three rail-highway crossings that are the subject of this appeal.

The Commission, by letter dated November 20, 1997, approved the Department's application. Approval of the project meant that any utility using the public right-of-way along this portion of Delaware Avenue, would have to relocate its facilities. PECO, Bell, the Philadelphia Gas Works, and the City of Philadelphia (City) all maintain facilities within the public right-of-way inside the project area. The Department and Conrail entered into a stipulation whereby Conrail agreed to pay the Department approximately $460,000.00 towards the project. Subsequently, the Department entered into stipulations with various municipal utilities to share the costs of relocation of their facilities that would be impacted by the reconstruction. The Department, however, did not enter into agreements with either PECO or Bell to share the costs of relocating any of their facilities located in the rights-of-way along Delaware Avenue. Consequently, both sought reimbursement from the Department for all costs actually incurred in connection with the removal and replacement of the PECO and Bell facilities; PECO sought $2,590,704.00 and Bell, $108,000.00. While the Department was using federal and state monies to fund the project, the Department had not applied for any federal funding to cover relocation costs for non-municipal public utilities and, therefore, refused to agree to reimburse PECO and Bell for the aforementioned costs.

The ALJ conducted a pre-hearing conference on February 24, 1998, and a full evidentiary hearing on March 24, 1998. At the hearing, the ALJ admitted into evidence exhibits submitted by the City, the Department, PECO, Bell and Conrail. Further, a number of late-filed exhibits were admitted after the hearing.[2] It was established that PECO had facilities

2. Sworn statements were taken from all of the witnesses and distributed to all of the parties prior to the hearing. At the hearing, the statements were admitted into evidence and then each witness was cross-examined on the material contained in their affidavit. Several times additional evidence was requested by opposing counsel, whereby the ALJ asked that this information be submitted as "late-filed exhib-

located in the Delaware Avenue right-of-way, but no documentary evidence was submitted in the form of permits to substantiate or define PECO's authorization to place and maintain its facilities in the public right-of-way. On November 30, 1998, the ALJ issued a Recommended Decision containing thirty-eight findings of fact and five conclusions of law, and decided that the Department should reimburse PECO and Bell in full for their relocation expenses, minus any betterment to their facilities. The ALJ considered the following as a basis for his Recommended Decision: (1) benefits received by the ratepayers of the particular utility; (2) the availability of state and/or federal funding for the project; (3) imposing costs upon the party responsible for the situation (typically referred to as the "cost causer"); and (4) any additional equities relevant to the particular situation. The Department filed exceptions with the Commission, which filed an Order on April 5, 1999, now at issue in the matter before this Court. Cost allocation was the only issue before the Commission.

The Commission concluded that the Recommended Decision of the ALJ was not just and reasonable, granted the exceptions filed by the Department, and ordered PECO and Bell, at their sole cost and expense, to furnish all material and labor to alter, relocate or remove their facilities from the project area. This decision was based on several factors including the following: (a) that PECO and Bell receive a substantial benefit from locating their facilities in a public right-of-way; (b) that there were no federal funds available to reimburse PECO and Bell because federal funding is only available to the Department to cost share with municipal, non-carrier public utilities; (c) that although the Department was the "cost causer" behind the project, the Department is not required to wait until utility facilities have reached the end of their useful lives to undertake a project of this type where public safety

its." For example, the Department requested copies of the permits allowing PECO to locate their facilities in the public right-of-way along Delaware Avenue. PECO agreed to provide them, if they could be located, and the ALJ instructed PECO to file the permits as "late-filed exhibits." However, in the matter of the permits, PECO was unable to locate them and they were never filed.

and design improvements are needed; and (d) such a decision was consistent with previous Commission adjudications on this issue.

On April 20, 1999, PECO requested reconsideration of the April 5, 1999 Order of the Commission. By Order adopted June 24, 1999, the Commission determined that the issues raised by PECO in support of its request that the Commission reconsider its April 5, 1999 Order were not new and novel arguments that would persuade the Commission to reverse or amend its earlier Order. PECO appealed to the Commonwealth Court.

The Commonwealth Court vacated the Order of the Commission and remanded the matter, concluding that the Commission abused its discretion by considering the reasons underlying the abrogated common law rule [3] in arriving at its decision. The Commission filed a Petition for Allowance of Appeal with this Court, which we granted, and Bell, Conrail and the Department intervened.

## DISCUSSSION

The power of the Commission is statutory, arising either from the express words contained in the enabling statutes or by a strong and necessary implication from those words, *Feingold v. Bell of Pennsylvania,* 477 Pa. 1, 383 A.2d 791 (1977), and the legislative grant of power to act in any particular case must be clear. *Delaware River Port Authority v. Pennsylvania Public Utility Commission,* 393 Pa. 639, 145 A.2d 172 (1958). Further, we observe that appellate review of an Order of the Commission is limited to: (1) determining whether a constitutional violation or error in procedure has occurred; (2) the decision is in accordance with the law: and (3) the necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704; *AT & T v. Pennsylvania Public Utility Commission,* 558 Pa. 290, 737 A.2d 201 (1999). We

3. As discussed *infra,* the common law rule, abrogated in 1978, required public utilities to bear the full expense of protection, alteration, relocation or removal of their facilities from public rights-of-way when alteration of a rail-highway crossing obligated the utilities to do so.

must first consider whether, as the Commonwealth Court found, the Commission applied the common law rationale in determining an allocation of costs.

 Frequently a survey of previous iterations of an act or the contemporaneous interpretations of prior laws will shed light on the meaning or intention of the General Assembly, for no legislative enactment is created in a vacuum. In *City of Philadelphia v. Philadelphia Electric Co.*, 504 Pa. 312, 473 A.2d 997 (1984), this Court surveyed the historical background of cost allocations and the authority of the Commission to apportion them, which we briefly review. Historically, Pennsylvania's non-transportation public utilities have been permitted to occupy highway rights-of-way free of cost, subject and subordinate to the police power of the Commonwealth to control and regulate the highways for the benefit of the public, such as in construction, relocation, alteration, protection or abolition of rail-highway crossings. *Bell Telephone Co. of Pennsylvania v. Lewis,* 317 Pa. 387, 177 A. 36, *appeal dismissed,* 296 U.S. 533, 56 S.Ct. 93, 80 L.Ed. 379 (1935). At common law, utilities were permitted to occupy highway rights-of-way without cost but could be ordered by the state or a municipal agency to remove and relocate their facilities, at the sole cost and expense of the utility. *See generally, City of Philadelphia; Delaware River Port Authority; Department of Highways v. Pennsylvania Public Utility Comm'n,* 394 Pa. 31, 145 A.2d 538 (1958). The benefits to the utilities in locating along public rights-of-way were significant because, although they obtained no property rights in the highway right-of-way, they were not required to purchase expensive private rights-of-way or pay fees, taxes or upkeep for locating their facilities there. Thus, the basis for the common law rule was that, although the utility was permitted to use the right-of-way because it served a public interest, the primary purpose of the public easement was the public's own use; any use by a public utility was subordinate to the interest of the public. Hence, any utility that chose to locate its facilities in a public right-of-way ran the risk that the public welfare would require changes that would mandate relocation of its facilities.

The enactment of the Public Service Company Law in 1913,[4] conferred upon the Public Service Commission exclusive jurisdiction over the construction of rail-highway crossings. Section 12 of the Public Service Company Law specifically included the common law rule requiring non-transportation utilities to bear the costs of relocation incurred because of a rail-highway crossing project. Section 12 provided in pertinent part:

[W]here the order of the Commission shall, as part of the regulation of the construction, relocation, alteration, or abolition of any crossing aforesaid, require, as incidental thereto, a relocation, changes in or the removal of any adjacent structures, equipment or other facilities of any telegraph, telephone, gas, electric light, water power, water pipeline, or other public service company, **said company shall, at its own expense, relocate, change or remove, such structures, equipment or other facilities in conformity with the order of the commission**. . . .

66 P.S. § 1112 (repealed) (emphasis added). This express prohibition against the reimbursement of utilities for relocation costs was *not* included when the Public Utility Law of 1937[5] was enacted to supersede the 'Public Service Company Law. Nevertheless, this Court, when faced with a utility relocation case, continued to reject the argument that the common law rule was abrogated by implication as a result of that deletion and the Court held that the 1937 enactment did not establish:

[A] clear, legislative intent to change the well-settled policy of the [common] law that non-transportation public utilities must bear the expenses of relocating their facilities when the relocation is brought about by governmental exercise of the police power such as in construction, relocation, alteration, protection or abolition of a highway-rail crossing.

*Delaware River Port Authority*, 145 A.2d at 176 (emphasis omitted). In *Delaware River Port Authority*, we limited the

4. Act of July 26, 1913, P.L. 1374, No. 854, art. V, § 12 (repealed 1937).

5. Act of May 28, 1937, P.L. 1053, *as amended*, 66 P.S. § 1101 *et seq.* (repealed 1978).

Commission's right to allocate relocation costs pursuant to section 411(a) of the Public Utility Code [6] to relocation costs incurred by the railroad, railway or the owners of the highway. Then, in 1957, Pennsylvania House Bill No. 984 (Session of 1957) provided that, "whenever the Secretary of Highways should determine that any utility located in, on, or above, any highway should be relocated to accommodate a reimbursable federal-aid highway project, the cost of relocation should be paid by the Commonwealth out of the Motor License Fund." *Department of Highways v. Pennsylvania Public Utility Commission,* 185 Pa.Super. 1, 136 A.2d 473, 478 (1957), *rev'd on other grounds,* 394 Pa. 31, 145 A.2d 538 (1958). The Bill passed the House and Senate, but was vetoed by the Governor.

Subsequently, the legislature amended section 411(a) in 1963 to read as follows:

Section 411. Compensation for Damages Occasioned by Construction, Relocation, Protection, Alteration, or Abolition of Crossings.

(a) The compensation for damages which the owners of adjacent property taken, injured or destroyed may sustain in the construction, relocation, alteration, protection, or abolition of any crossing under the provisions of this act, shall, after due notice and hearing, be ascertained and determined by the commission. Such compensation, as well as the expense of such construction, relocation, alteration, protection, or abolition of any crossing, and of facilities at or adjacent to such crossing which are used in any kind of public utility service, shall be borne and paid, as hereinafter provided, by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine, unless such proportions are mutually agreed upon and paid by the interested parties....

66 P.S. § 1181 (repealed).

We determined that the 1963 amendment was enacted in response to our decision in *Delaware River Port Authority,*

---

6. 66 P.S. § 1181 (repealed).

and that the added language provided a clear grant of authority to the Commission to allocate relocation costs incurred by any kind of public utility service in rail-highway crossing cases. *See also, City of Pittsburgh v. Pennsylvania Public Utility Comm'n*, 45 Pa.Cmwlth. 80, 404 A.2d 786 (1979). We concluded that, after the 1963 amendment to section 411(a), the common law rule requiring utilities to pay their relocation costs was replaced with a discretionary allocation by the Commission and that the Commission's statutory power to allocate relocation costs to the appropriate parties in rail-highway crossing cases was limited only by the existence of executed agreements between the parties as to the allocation of such costs.

The Public Utility Law of 1937 was repealed by the General Assembly in 1978[7] and the Pennsylvania Consolidated Statutes were simultaneously amended to include Title 66, Public Utilities.[8] As a result, the current statutory provision, which is virtually identical to its predecessor section 411(a), now appears at 66 Pa.C.S. § 2704(a). Section 2704(a) provides:

Compensation for damages occasioned by construction, relocation or abolition of crossings.

(a) General rule.—The compensation for damages which the owners of adjacent property taken, injured, or destroyed may sustain in the construction, relocation, alteration, protection, or abolition of any crossing under the provisions of this part, shall, after due notice and hearing, be ascertained and determined by the commission. Such compensation, as well as the cost of construction, relocation, alteration, protection, or abolition of such crossing, and of facilities at or adjacent to such crossing which are used in any kind of public utility service, **shall be borne and paid, as provided in this section, *by the public utilities [or] municipal corporations ... concerned, or by the Commonwealth,*** in such proper proportions as the commission may, after due notice and hearing, determine, unless such proportions are mutually agreed upon and paid by the interested parties.

7. Act of July 1, 1978, P.L. 598, No. 116(b).

8. Act of July 1, 1978, P.L. 598, No. 116(a), 66 Pa.C.S. § 101 *et seq.*

66 Pa.C.S. § 2704(a) (emphasis added).[9] The 1978 codification did not change the Commission's authority to allocate costs. It is the application of this section and more specifically the language emphasized in the statutory text that concerns us here.

In the instant matter, PECO asserts that the Commission erroneously relied on the abrogated common law rule as the sole factor underpinning its decision. PECO complains that the determination by the Commission that PECO's ratepayers should bear the burden of its relocation costs because PECO has received, and continues to receive, substantial benefits from the location of its facilities in public rights-of-way, simply resurrects the old common law rule that utilities that occupy public rights-of-way are not entitled to compensation if forced to relocate their facilities because of rail-highway improvement projects. PECO posits that to apply the rationale underlying an abrogated common law rule defies logic and constitutes application of the rule itself. PECO also maintains that, if the Commission is permitted to utilize the

9. Several contiguous jurisdictions, however, require that relocation costs be reimbursed from other sources and clearly indicate as such within their statutory text. Contrast the language of the Pennsylvania statute with that of neighboring New Jersey. Section 27:7–44.9(a) of the New Jersey statutes and section 16:25–12.1 of the New Jersey Administrative Code apply to all public, private and cooperatively owned utilities that are to be located, adjusted or relocated within rights-of-way subject to administration by NJDOT and provide that:

> Whenever the commissioner determines that it is necessary that facilities which now are, or hereafter may be, located in, on, along, over or under any highway project shall be relocated in the project or should be removed from the project, the public utility or cable television company owning or operating the facilities shall relocate or remove the same in accordance with the order of the commissioner. The cost and expenses of such relocation or removal, including the cost of installing the facilities in a new location, or new locations, and the cost of any lands, or any rights or interests in lands, and any other rights acquired to accomplish the relocation or removal, shall be ascertained and **paid by the commissioner as a part of the cost of the project.**

N.J.S. 27:7–44.9(a) (emphasis added).

Moreover, Maryland Code 1951, art. 89B, § 120 also provides that if utility removal or relocation is required as a consequence of a highway construction project, the utility is to be reimbursed for its relocation costs from project funds.

common law rationale, it will become the dispositive factor in any cost allocation decision that the Commission makes.

■ Section 2702 of the Public Utility Code, 66 Pa.C.S. § 2702, vests the Commission with the exclusive authority over rail-highway crossings and the manner and condition by which such crossings will be maintained. It is for the General Assembly to determine whether public utilities must pay for the removal of their facilities placed within highway rights-of-way. The General Assembly has expressed its intention that the Commission should have the power to impose those costs on "the **public utilities** or municipal corporations ... concerned, **or** [on] the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine...." 66 Pa.C.S. § 2704(a) (emphasis added). Accordingly, a plain reading of the statute indicates that the Commission is empowered to assess costs against the public utilities in any proportion that the Commission determines, which would include 100% of the costs.

■ Pursuant to this authority, the Commission apportions the costs of constructing, removing or altering rail-highway crossings amongst the parties affected. In determining the correct standard by which to allocate these costs, this Court has held that the Commission is not confined to any one formula, but must consider all relevant factors when allocating utility relocation costs, *AT & T v. Public Utility Comm'n*, 737 A.2d at 209–10, limited only by the fundamental requirement that its decision be just and reasonable. *Erie Railroad Co. v. Public Service Comm'n*, 271 Pa. 409, 114 A. 357 (1921). As a guide in the exercise of its discretion in cost allocation decisions, the Commission has emphasized four factors of the many it has considered, which include: (1) the party who originally built the crossing; (2) the relative benefits initially conferred by the construction of the crossing; (3) the party who is responsible for the deterioration of the crossing; and (4) the benefits accrued from the reconstruction of the crossing. *Application of the City of Wilkes Barre*, PUC Docket No. A–00101606 (filed April 9, 1981). In *AT & T*, this Court

determined that the Commonwealth Court could not impose a mandatory, exclusive list of considerations upon the Commission or limit the scope or results of the Commission's determination. *AT & T v. Public Utility Comm'n,* 737 A.2d at 210. We reviewed the cost allocation determination of the Commission in that case and concluded that the Commission considered and relied upon specific factors that were relevant to the proceeding in making its determination that AT & T and Sprint should not be reimbursed for relocating their facilities. *Id.* It is noteworthy that in *AT & T* we recognized that Sprint was left in the same position as a non-transportation utility at common law. The determination implicit in our holding in *AT & T* is that reaching the same result as the application of the abrogated common law rule is not improper where a decision by the Commission is based upon its consideration of specific and relevant factors in the proceeding.

In the instant matter, and as previously indicated, the Commission based its decision on several factors including: (a) PECO and Bell receive a substantial benefit from locating their facilities in a public right-of-way; (b) there were no federal funds available to reimburse PECO and Bell because federal funding is only available to the Department to cost share with municipal, non-carrier public utilities; (c) although the Department was the "cost causer" behind the project, the Department is not required to wait until utility facilities have reached the end of their useful lives to undertake a project of this type where public safety and design improvements are needed; and (d) such a decision was consistent with previous adjudications on this issue made by the Commission. Consequently, the Commission based its decision on factors relevant to the matter before it and not blind adherence to an abrogated common law rule. We observe that the common law rule **required** that utilities pay all of the costs of relocation. What was abrogated was the requirement that the utilities remain unreimbursed, regardless of the equities of the reimbursement decision, rather than an outright determination by the General Assembly that the Commission should not consider any benefit to the utility in arriving at its decision. Attributing such

intent to the General Assembly would negate any allocation to the utility and render superfluous the portion of the statute that conferred discretion on the Commission to apportion relocation costs to the utility.

PECO also complains that part of the Commission's reasoning was based on its finding that no federal funds were available to reimburse non-transportation public utilities for their relocation costs. PECO asserts that this is so because the Department, which has adopted a policy that it not pay for relocating non-transportation facilities, circumvents any order to reimburse by the Commission by applying for federal funding for a project prior to any cost allocation hearing. Thus, PECO contends, the Department is applying the common law rule and the Commission has turned the policy of the Department into a *de facto* regulation. We cannot agree with PECO on this point. The policies of the Department are not presently before this Court.

We are also concerned that affirming the Commonwealth Court would create a *per se* rule that would preclude the Commission from reaching the same conclusion mandated by the common law rule, even if consideration by the Commission of all relevant factors produced the same result. The decision of the Commonwealth Court has created an artificial limitation on the results that the Commission can reach and impinged on the discretion of the Commission by removing the possibility that a non-transportation public utility could be required to bear its own relocation costs because of any benefit derived from its location in a public right-of-way. The Commission determined from the record not only that PECO received substantial benefits from locating its facilities in the public rights-of-way along Delaware Avenue, which fact PECO had admitted, but also that federal funding was unavailable to reimburse PECO's relocation costs. The Commission also reviewed the role of the Department as the "cost causer," but declined to attach any weight to this determination. We cannot view the Commission determination, as defined by the Commonwealth Court, as solely based on the abrogated common law rule. Moreover, as the legislature directed, the

Commission may assign relocation costs to the utilities, to the Commonwealth, or to any combination of the two. The legislature clearly did not intend to limit the discretion of the Commission as to an award of relocation costs, but **expanded** that discretion by removing the **requirement** contained in the common law rule that the Commission **must** allocate all of the cost for relocation to the utilities themselves. Therefore, the Commonwealth Court erred in concluding that the Commission may not consider the factors underlying the common law rule when making a cost allocation.

We turn now to a review of the decision of the Commission to ascertain whether the record supports the decision and whether it is just and reasonable.

The Commission determined from the record that PECO received substantial benefits from locating its facilities in the public right-of-way along Delaware Avenue. We note that PECO admitted that it received substantial benefits from locating its facilities in the public right-of-way; it even presented testimony as to some of these benefits.

Based on the record before it, the Commission concluded that PECO's facilities had already expended a significant portion of their service lives before the project began. Further, the Commission determined that the relocation work performed by PECO would result in a betterment to some of PECO's facilities. The record indicates that PECO intended to replace old lead paper-encased copper wire with new, higher capacity aluminum wire. Additionally, PECO observed that it would replace existing terra cotta or fiberboard ducts with new and larger PVC pipe. The Department presented testimony explaining the potential for increased capacity resulting from the installation of the new materials. These factors properly weighed in favor of an assignment of the relocation costs to PECO because PECO and its ratepayers would be the primary beneficiaries of the improved facilities.

The Commission then evaluated the availability of federal funding to reimburse PECO for its relocation costs. The use of federal funding to reimburse a utility for its relocation costs

is predicated on the Department's obligation under State law to do so. 23 C.F.R. § 654.107. This obligation arises when the Department forces the utility to relocate facilities from the utility's **private** right-of-way, 36 P.S. § 670–412,[10] when the Commission orders the Department to reimburse the utility, 66 Pa.C.S. § 2704(a), or, at the discretion of the Secretary of Transportation, to cost share with *municipal* non-transportation utilities. The present matter is not encompassed within any of these provisions. Moreover, even if one did, the Commission does not consider the availability of outside funding as a sufficient reason alone to justify allocating relocation costs to the Department.

The Commission rejected the conclusion of the ALJ that the Department should bear PECO's relocation costs because the Department initiated the highway/railway project. Moreover, the Commission noted that the record was silent as to the party responsible for the deteriorating conditions in the project area that necessitated the improvements to the affected crossings. The Commission determined that the Department should not be penalized for conducting a highway safety improvement project and that it was unrealistic to expect the Department to wait until all utility facilities in a project area had reached the end of their useful lives before commencing a project needed to ensure the safety of the public. Thus, while the Commission considered this factor, it did not assign it much weight. We have said that it is unnecessary for the Commission to "provide an explanation concerning the weight that it attached to each individual factor in its overall cost-allocation analysis." *AT & T*, 737 A.2d at 212.

Finally, the Commission considered its decisions in prior cost allocation proceedings that were similar to the instant matter. While the Commission is not bound by the rule of *stare decisis*, *Baker v. United States*, 338 F.Supp. 331 (E.D.Pa.1972), an administrative agency must render consistent opinions and should either follow, distinguish or overrule its own precedent. *Lehigh Valley Farmers v. Block*, 640

10. Section 1 of the State Highway Law, Act of June 1, 1945, P.L. 1511, *as amended.* 36 P.S. § 670–412.

F.Supp. 1497 (E.D.Pa.1986), *aff'd*, 829 F.2d 409 (3d Cir.1987). Here, the Commission analogized the instant matter to its recent decision in *In re Smithfield Street Bridge*, PUC Docket No. A 00110763 (February 11, 1999), wherein the Department sought approval to rehabilitate the Smithfield Street Bridge in the City of Pittsburgh. There, Bell and Duquesne Light Co. were directed to bear 100% of the costs and expenses resulting from the required relocation of their facilities. In both *Smithfield Street Bridge* and the matter *sub judice,* the Commission concluded that taxpayers of the Commonwealth should not be required to reimburse the affected utilities when the taxpayers received no direct benefit.

Based on the record before us, we find that substantial evidence appeared in the record to support the adjudication of the Commission either with or without its reliance on the disputed benefits factor.

## CONCLUSION

■ Our review of the record supports the conclusion of the Commission that there were no compelling factors weighing in favor of reimbursement for PECO and that significant evidence supported the determination that PECO should shoulder its own relocation costs. The statute provides that, "[costs] shall be borne and paid ... by the public utilities [or] municipal corporations ... concerned, or by the Commonwealth, in such proper proportions as the commission may ... determine...." 66 Pa.C.S. § 2704(a). This language explicitly affords the Commission wide discretion in determining the allocation of costs, including the option of assessing the entire cost to the public utilities. While not determinative in a cost allocation matter, the respective historic and prospective benefits that a utility and its ratepayers enjoy from the placement of utility facilities in a public right-of-way is one factor among many that may be considered by the Commission in a cost allocation proceeding. It is only necessary that the Commission consider all relevant facts, render a decision that is just and reasonable, and one supported by substantial evidence. In the instant matter, the Commission has determined, based

on substantial evidence, that the public utilities, and no other, will bear these costs. This is within the province of the Commission and, based on the foregoing, we reverse the Order of the Commonwealth Court and reinstate the Order of the Commission.

Former Chief Justice FLAHERTY did not participate in the decision of this case.